OPINION *Page 2 
{¶ 1} Appellant Natonya Rohrbaugh, the mother of the minor children Austin Rohrbaugh and James Simmons IV, appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which granted custody of Austin to his father and permanent custody of James to Appellee Stark County Department of Job and Family Services ("SCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} After several months of non-court involvement in 2005, based on filthy home conditions and issues of James' medical care, SCDJFS filed a complaint alleging neglect and dependency concerning Austin and James on September 26, 2005. The initial concerns were centered on appellant's eviction from housing, followed by the family being asked to leave a relative's home, as well as appellant's lack of cooperation with the Healthy Tomorrows program and James' father's arrest on a domestic incident.
 {¶ 3} Following a shelter care hearing, James was ordered into the temporary custody of SCDJFS, while Austin was placed with his father, Andrew Soliday. On October 20, 2005, appellant stipulated to a finding of neglect as to both children.
 {¶ 4} In August 2006, SCDJFS filed motions seeking (1) a change of legal custody of Austin to his father, Mr. Soliday, and (2) permanent custody to SCDJFS of James.
 {¶ 5} A trial on both motions was conducted on October 12, 2006. The trial court issued a judgment entry and findings of fact and conclusions of law on October 30, 2006 granting permanent custody James to SCDJFS and "reaffirming" a change of legal custody of Austin to his father. *Page 3 
 {¶ 6} Appellant filed a notice of appeal on November 29, 2006. She herein raises the following four Assignments of Error:
 {¶ 7} "I. THE COURT'S ORDER STATING THAT JAMES SIMMONS IV COULD NOT BE PLACED WITH ANY BIOLOGICAL PARENT AT THE TIME OF TRIAL OR WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 8} "II. THE COURT'S ORDER STATING THAT IT WOULD BE IN THE BEST INTEREST OF JAMES SIMMONS IV THAT PERMANENT CUSTODY BE GRANTED WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 9} "III. THE COURT'S ORDER `REAFFIRMING' A GRANT OF A CHANGE OF LEGAL CUSTODY OF AUSTIN ROHRBAUGH TO ANDREW SOLIDAY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 10} "IV. THE COURT'S DENIAL OF COUNSEL FOR MOTHER-APPELLANT'S MOTION TO CONTINUE THE PERMANENT CUSTODY TRIAL WAS AN ABUSE OF DISCRETION."
 I. {¶ 11} In her First Assignment of Error, appellant challenges the trial court's finding that James IV could not be placed with either parent within a reasonable time.
 {¶ 12} R.C. 2151.414(B)(1) reads as follows: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent *Page 4 
custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 14} "(b) The child is abandoned.
 {¶ 15} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 16} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. * * *."
 {¶ 17} In determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), a trial court is to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C. 2151.414(E)(1). *Page 5 
 {¶ 18} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758.
 {¶ 19} We first address the case regarding the father of James IV, James Simmons III, who has not appealed the grant of permanent custody. James III was incarcerated at the time of the permanent custody trial. See Tr. at 17-18. Although he completed the psychological evaluation portion of his case plan and established paternity of James IV, he followed through on nothing else. Tr. at 18-19. Moreover, the court found James III had abandoned his child pursuant to R.C.2151.414(B)(1)(b). There was thus no requirement for any R.C.2151.414(B)(1)(a) determinations, based on the court's finding of abandonment. See, e.g., In re Willis, Coshocton App. No. 02CA15, 2002-Ohio-6795, ¶ 30. As an appellate court, we are not required to issue rulings that cannot affect matters at issue in a case. See, e.g.,In re Merryman/Wilson Children, Stark App. Nos. 2004 CA 00056, 2004 CA 00071, 2004-Ohio-3174, ¶ 59, citing State v. Bistricky (1990),66 Ohio App.3d 395, 584 N.E.2d 75.
 {¶ 20} We next address James IV's case regarding appellant-mother. She has admitted to a long history of drug abuse, particularly marihuana and cocaine. Tr. at 41. Her substance abuse problem traces back to age ten, when she was apparently introduced to drugs by her own mother. Tr. at 11. Despite these issues, appellant delayed involvement in substance abuse treatment under her case plan for nearly a year. Tr. at 37. From October 2005 until July 2006, appellant was very inconsistent with her drug screens and generally would not submit to the drug screen requests for several *Page 6 
days after said requests. Tr. at 11. Furthermore, appellant tried to enroll in Goodwill Parenting twice during the first few months of 2006; however, she was denied based on her failure to address her substance abuse problem. Tr. at 12-13. Prior to the incarceration of James III, appellant would have visitors over who used illegal drugs, but appellant "didn't realize that that was an issue." Tr. at 39-40.
 {¶ 21} According to Aimee Thomas of Northeast Ohio Behavioral Health, who completed appellant's parenting evaluation, appellant has presented with several personality disorders. Of most concern were the diagnoses of dependent and borderline personality disorders, which Ms. Thomas indicated would affect appellant's ability to provide a stable home environment with a structured routine for a child. Tr. at 46-47.
 {¶ 22} Appellant's case plan also required redress of appellant's handling of James IV's medical issues, particularly his cystic fibrosis. Appellant failed to take advantage of the informational and service programs for the disease at Akron Children's Hospital, although she did visit the child once during two hospital stays. Tr. at 16-17. James IV is supposed to live in a smoke-free environment, yet appellant resides in an apartment with her father and his girlfriend, both of whom apparently smoke, as does appellant herself. Tr. at 15, 39. Her father's apartment is the fifth residence appellant has had since SCDJFS became involved. Tr. at 15. Appellant conceded it would have been "very possible" to comply more adequately with her case plan if she had not wasted time at the beginning. Tr. at 42.
 {¶ 23} Based on the foregoing, we find the trial court's conclusions pursuant to R.C. 2151.414(B) as to appellant were supported by the weight and sufficiency of the evidence. Appellant's First Assignment of Error is overruled. *Page 7 
 II. {¶ 24} In her Second Assignment of Error, appellant maintains the trial court's finding that permanent custody of James would be in his best interest was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 25} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 26} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 31} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the *Page 8 
impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994), 95 Ohio App.3d 309, 316,642 N.E.2d 424.
 {¶ 32} The record in the case sub judice reveals that in addition to cystic fibrosis, James IV has developmental and growth delays. Tr. at 67, 75. Appellant's visitation, which was sporadic at the beginning of the case, but which did become more consistent, revealed continuing concerns about appellant's ability to manage the child's health issues. According to Elizabeth Parsons, the SCDJFS ongoing services worker, appellant did not consistently provide digestion medication to James. Tr. at 68. Appellant also provided foods and beverages to James which did not meet his dietary requirements. Tr. at 69. Parsons addressed these issues multiple times with appellant, but the problems continued. Tr. at 69, 71.
 {¶ 33} Parsons also testified that a relative was considered for placement, but the relative had legal problems, including past DUI convictions. Tr. at 72. Parsons concluded that, in her opinion, the best interest of James would be served by permanent custody to SCDJFS. Tr. at 70-72.
 {¶ 34} In addition to other evidence pertinent to best interests as set forth earlier in this opinion, the trial court was presented with a written guardian ad litem report recommending permanent custody of James to the agency. Upon review of the record in the case sub judice, we conclude the trial court's grant of permanent custody of James to SCDJFS was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.
 {¶ 35} Appellant's Second Assignment of Error is overruled. *Page 9 
 III. {¶ 36} In her Third Assignment of Error, appellant challenges the trial court's "reaffirmance" of legal custody of Austin to his father, Andrew Soliday.
 {¶ 37} The General Assembly has provided the dispositional options which the agency is to request in dependency, neglect, and abuse cases. See In re Cunningham, Stark App. No. 2003CA00161, 2003-Ohio-4271, ¶ 11. Among these are R.C. 2151.415(A)(1), which allows "[a]n order that the child be returned home and [to] the custody of the child's parents, guardian, or custodian without any restrictions," and 2151.415(A)(3), which permits a grant of legal custody to a relative or "other interested individual." (Emphasis added).
 {¶ 38} Pursuant to R.C. 2151.011 (B)(19), "legal custody" is defined as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities. * * * "
 {¶ 39} In the dispositional judgment entry of October 20, 2005 in the case sub judice, the trial court ordered "temporary custody" of Austin to his father, Mr. Soliday, who apparently had not been the custodial parent prior to the SCDJFS complaint. On August 9, 2006, SCDJFS filed a "motion to change legal custody," requesting that the court terminate SCDJFS custody of Austin and grant legal custody to the father.
 {¶ 40} The record reveals a magistrate's order dated August 18, 2006, informing the parties that an evidentiary hearing on the change of legal custody motion would be *Page 10 
conducted on October 12, 2006 (the day of the permanent custody hearing) for twenty minutes. See R.C. 2151.415(B). On that date, Soliday did not appear, although his attorney was present. Soliday's attorney reiterated that Soliday had previously stipulated to the agency's request to designate him as the legal custodian. Tr. at 5. When SCDJFS trial counsel later began to take testimony on its change of legal custody motion by inquiring of Ms. Parsons as to Soliday's case plan progress, the trial court interrupted and advised counsel that it was not "necessary to go through it." Tr. at 20.
 {¶ 41} SCDJFS's change of legal custody motion does not recite any statutory authority, although we surmise the motion was brought pursuant to R.C. 2151.415(A)(3), supra. Nonetheless, our reading of R.C.2151.415(A) reveals a lack of clear legislative guidance where, as here, the agency seeks the grant of legal custody to a parent who had been living separate and apart from residential parent at the time the case commenced. We note R.C. 2151.415(A)(1) provides for returning the child to the parents, in the plural; R.C. 2151.415(A)(3) uses the term "relative," which in everyday parlance suggests a non-parental extended family member.
 {¶ 42} Ohio law provides an initial presumption that either parent is suitable to care for their children. See In re C.R., Cuyahoga App. No. 82891. 2004-Ohio-4465, ¶ 15, citing In re Hockstok, 98 Ohio St.3d 238,781 N.E.2d 971, 2002-Ohio-7208. In the case sub judice, Austin had been in the temporary custody of his father throughout the pendency of the case, and SCDJFS gave no indication to the trial court that it had concerns about this parent. Furthermore, appellant made no request to proffer any evidence about any concerns she may have had. Thus, while the court's labeling of its legal custody decision as a "reaffirmance" was a misnomer, we hold the trial court did *Page 11 
not err or abuse its discretion in granting the dispositional order of legal custody of Austin to Mr. Soliday under the circumstances of this case.
 {¶ 43} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 44} In her Fourth Assignment of Error, appellant maintains the trial court erred in denying her request, via counsel, for a continuance of the permanent custody trial. We disagree.
 {¶ 45} The grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. Polaris Ventures IV,Ltd. v. Silverman, Delaware App. No. 2005 CAE 11 0080, 2006-Ohio-4138, ¶ 14, citing State v. Unger (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In the case sub judice, appellant's trial counsel indicated that he had had problems keeping in communication with appellant, as her telephone had been disconnected and attempts by mail were unsuccessful. Tr. at 5. However, appellant's carelessness in maintaining contact with her attorney under such circumstances does not provide grounds for this Court to conclude the trial court abused its discretion in denying the requested continuance. *Page 12 
 {¶ 46} Appellant's Fourth Assignment of Error is overruled.
 {¶ 47} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.
 Wise, J. Hoffman, P. J., and Farmer, J., concur. *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
 Costs to appellant. *Page 1