JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, J.C. ("father" or "appellant"), appeals the trial court's granting legal custody of his youngest daughter, C.R. ("the child"), to her maternal aunt and uncle. The child was born in October 2000 to S.R. ("mother"). The mother and father have two older children together, who are in the legal custody of their paternal grandparents. Although mother and father had a long-standing on-again, off-again relationship, when she was pregnant with the child, the mother told the father that the baby was not his child. The parents have never married and are no longer together.
 {¶ 2} At the time she was born, the child was drug dependent.[1] Cuyahoga County Department of Children and Family Services ("CCDCFS") therefore obtained emergency custody of her in late July, and mother was arrested on drug charges. The child was placed temporarily with her aunt and uncle, mother's brother and sister-in-law, who had been participating in her care since birth, where she remained until the hearing. Because the aunt and uncle had frequent visits with the older two children, they also had contact with the paternal grandmother, who had custody of those two children. The aunt and uncle testified that they told the grandmother that her son, appellant, was the father of the child.
 {¶ 3} It was only after the aunt and uncle moved for legal custody however, that father had paternity testing done and subsequently applied for custody. Six months after father moved for custody of the girl, the paternal grandmother also moved for custody.
 {¶ 4} The juvenile court took testimony over a two-day period concerning the three competing motions for custody. The testimony showed, and the court found, that although the aunt and uncle were providing a good home for the child, either her father or her grandmother could also provide a good home for her.
 {¶ 5} The magistrate recommended leaving the child with the aunt and uncle and awarding them legal custody. In his report, the magistrate noted that "[f]ather's demeanor during trial indicated that he has not been committed to [the older two children] in the past and his present demeanor shows less than vigorous desire to take legal custody of [C.R.]. If the child was granted into the legal custody of dad it is questionable if father or [paternal grandmother] would raise the child." The magistrate also noted that the grandmother's "demeanor indicates a reluctance to grant visitation with other relatives. [Grandmother's] reluctance to agree to a fixed visitation schedule calls into question her willingness to work with other relatives. This clearly would not be in the best interests of [the child]." Finally, the court noted that "[i]f the child was moved from the [aunt and uncle] she could face confusion and/or loss of security and stability. This risk is not justified when the child is presently placed in a loving home which meets all the child's needs."
 {¶ 6} The court went on to note that although the paternal grandmother also could provide a good home to the child, the preponderance of the evidence supported leaving the child with her aunt and uncle.
 {¶ 7} Father appealed, raising five assignments of error. The first three assignments of error are interrelated and will be addressed together. They state:
 {¶ 8} "The juvenile court erred and abused its discretion by denying appellant-father his federal constitutional rights and fundamental liberty interest in the care, custody and management of his child as protected by the due process clause of theFourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution."
 {¶ 9} "The juvenile court erred and abused its discretion by denying appellant-father custody of his minor child because the juvenile court failed to make a determination that appellant-father was unsuitable prior to awarding custody to a non-parent as recognized by the Ohio Supreme Court in In reHockstok (2002), 98 Ohio St.3d 238."
 {¶ 10} "The juvenile court erred and abused its discretion in using the `best interest' standard in making its custody determination in this matter and denying appellant-father custody based on this standard, and erred and abused its discretion in determining that the best interest of the minor child would be served by awarding legal custody to the maternal aunt and uncle."
 {¶ 11} Father argues that the trial court committed an error of law when it applied the "best interest of the child" standard in making its decision to award custody to the aunt and uncle. He contends that the court instead was required to make a finding that he was unsuitable as a parent before depriving him of custody. We agree.
 {¶ 12} The conflict concerning when the "best interest of the child" standard applies in a particular child custody case arises because two different statutes govern child custody issues. One statute governs child custody cases in domestic relations court and the other governs child custody cases in juvenile court.
 {¶ 13} R.C. 3109.04 addresses the procedure and rules for custody disputes arising in domestic relations court. Pursuant to R.C. 3109.04(A):
 {¶ 14} "In any divorce, legal separation, or annulment proceeding and in any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, upon hearing the testimony of either or both parents and considering any mediation report * * * the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage. * * *"
 {¶ 15} The best interest standard applies in these cases because ordinarily, "the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children" to either of the parents, under the presumption that either parent is suitable to care for the children. R.C. 3109.04(A)(1); In re Hockstok,98 Ohio St.3d 238, 2002-Ohio-7208. The statute also addresses a situation in which neither parent is suitable to have custody of the child:
 {¶ 16} "If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings, together with as much of the record and further information, in narrative form or otherwise, that it considers necessary or as the juvenile court requests, to the juvenile court for further proceedings, and, upon the certification, the juvenile court has exclusive jurisdiction." R.C. 3109.04(D)(2).
 {¶ 17} For cases originating in juvenile court, however, both the determination of jurisdiction and the procedure are different. "The juvenile court has exclusive original jurisdiction under the Revised Code as follows: * * * to determine the custody of any child not a ward of another court of this state." R.C. 2151.23(A)(2). This statute does not provide a test or standard for the juvenile court to use to determine child custody cases. Hockstock, supra at ¶ 15.
 {¶ 18} Nonetheless, "[w]ithin the framework of the statutes, the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." Id. at ¶ 16. To protect that fundamental interest, "a finding of parental unsuitability has been recognized by this court as a necessary first step in child custody proceedings between a natural parent and nonparent." Id. at ¶ 18.
 {¶ 19} CCDCFS argues, however, that this court has held that when a child has been adjudicated neglected, a suitability finding is not required. It relies on In the Matter of C.F.,
Cuyahoga App. No. 82107, 2003-Ohio-3260. This reliance is misplaced. Although the facts in C.F. are consistent with the facts of this case, we find that the C.F. court misinterpreted the case law and its applicability to the situation at hand Instead, the Supreme Court's holding in Hockstok is controlling.
 {¶ 20} Here, the trial court failed to determine that father, as the natural parent of the child, was unsuitable to have custody of her. In fact, it expressly found that he could provide an adequate home for the her. The court erred, therefore, in awarding custody to nonparents, the aunt and uncle. Accordingly, these three assignments of error are sustained.
 {¶ 21} Father's fourth assignment of error states:
 {¶ 22} "The juvenile court erred and abused its discretion because the judgment was not supported by the manifest weight of the evidence."
 {¶ 23} The manifest weight of the evidence showed that father would not be an unsuitable parent. It also showed that allowing the child to remain in the custody of her aunt and uncle would be in her best interest. The magistrate admitted, however, that either home would be suitable. Therefore, in light of our ruling regarding appellant's first assignment of error, this assignment of error is sustained.
 {¶ 24} For his fifth assignment of error, father states:
 {¶ 25} "The juvenile court erred and abused its discretion by admitting hearsay evidence through police reports over seven years old where the prejudicial value outweighed the probative value of the evidence presented."
 {¶ 26} Father argues that the trial court erred when it allowed counsel for the aunt and uncle to introduce police reports showing that father had a DUI conviction and that mother had filed a police complaint against him for domestic violence. However, the law allows evidence at a dispositional hearing that would be inadmissible at an adjudicatory hearing. See R.C2151.35(B)(2)(b). Father fails to show that the police reports in question were admitted in error. This assignment of error is overruled.
 {¶ 27} The case is reversed and remanded for proceedings consistent with this opinion.
It is therefore ordered that appellant recover from appellees costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 Karpinski, P.J., concurs.
 Calabrese, Jr., J., Dissents With Separate DissentingOpinion.
[1] She later developed hepatitis after she was taken from her mother's custody.