In re S.M. et al.

[Cite as In re S.M., 160 Ohio App.3d 794, 2005-Ohio-2187.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84409.

Decided May 5, 2005.

Alexander Jurczenko and Tina E. Wecksler, for appellant.

Steven E. Wolkin, for appellee.

Patrick P. Leneghan, guardian ad litem.

_____

COLLEEN CONWAY COONEY, Judge.

{¶ 1} Appellant-father appeals the juvenile court's decision awarding legal custody of his two minor children to the children's maternal grandmother. Finding no merit to the appeal, we affirm.

{¶ 2} In 2001, the father and grandmother sought legal custody of S.M. and D.M. following the death of the children's mother. During the pendency of the motions, the trial court awarded the grandmother, without objection, temporary custody and redirected child support to her. In 2003, both motions for legal custody were heard before a magistrate, who recommended, and the trial court agreed, that the father was unsuitable as legal custodian of his minor children and awarded legal custody to the grandmother.

{¶ 3} The father appeals this decision, raising three assignments of error, which will be addressed together where appropriate.

### Standing/Applicable Legal Standard

{¶ 4} In his first assignment of error, the father argues that the trial court erred in adopting the magistrate's decision that the grandmother had standing to bring a motion for legal custody because it directly contravened his right to make decisions affecting his children.

{¶ 5} The Ohio Supreme Court and this court have long recognized that nonparents have standing in child custody cases. See *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971; *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 661 N.E.2d 1008; *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047; *In re C.R.*, Cuyahoga App. No. 82891, 2004-Ohio-4465, 2004 WL 1899219, appeal accepted on certified conflict on an unrelated issue, 105 Ohio St.3d 1436, 2005-Ohio-531, 822 N.E.2d 809; *In re C.F.*, Cuyahoga App No. 82107, 2003-Ohio-3260, 2003 WL 21434769. Therefore, the grandmother had standing in the instant matter to seek legal custody of the children.

{¶ 6} The father also argues in his first and second assignments of error that the determination of legal custody was based on an incorrect legal standard. He contends that the grandmother and the magistrate focused the trial proceedings on the best-interest-of-the-child standard instead of the unsuitability standard as set forth in *Perales*, supra.

{¶ 7} When reviewing a trial court's judgment on child-custody cases, the appropriate standard of review for this court is whether the trial court abused its discretion. *Masters v. Masters* (1994), 69 Ohio St.3d 83, 630 N.E.2d 665. An

abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73, 523 N.E.2d 846.

> The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.

Id. at 74, 523 N.E.2d 846, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 106 N.E.2d 772.

{¶ 8} Child-custody disputes in Ohio fall within the purview of one of two statutes, depending on where the case originates. R.C. 3109.04 addresses the procedure and rules for custody disputes arising in domestic-relations court. R.C. 3109.04(A) applies to "any proceedings pertaining to the allocation of parental rights and responsibilities for the care of a child." The best-interest-of-the-child standard is applied in these cases because ordinarily "the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of children" to either of the parents, provided that either parent is suitable to care for the children. R.C. 3109.04(A)(1); 3109.04(D)(2).

{¶ 9} However, if the case originates in juvenile court, R.C. 2151.23(A)(2) vests the juvenile court with exclusive jurisdiction "to determine the custody of any child not a ward of another court of this state." Unlike in domestic cases, this statute does not provide a test or standard for the juvenile court to use to determine child-custody cases. *C.R.*, supra, 2004-Ohio-4465, 2004 WL 1899219, at ¶ 17, citing *Hockstok*, supra, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 15.

{¶ 10} Regardless of where the custody case originates, "within the framework of the statutes, the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." Id. at ¶ 18; see, also, *Perales,* supra; *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857. Accordingly, in a child-custody proceeding between a parent and a nonparent:

> [A] court may not award custody to the nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has

become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child."

*Hockstok*, supra, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, at ¶ 17, quoting *Perales*, 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, syllabus.

■■ {¶ 11} If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be deemed unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody. Id. Thus, a finding of parental unsuitability is the first step in child-custody proceedings between a natural parent and a nonparent.

The general rule in Ohio regarding original custody awards in disputes between a parent and a non-parent is that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children."

*Masitto*, 22 Ohio St.3d at 65, 22 OBR 81, 488 N.E.2d 857, quoting *Perales*, 52 Ohio St.2d at 97, 6 O.O.3d 293, 369 N.E.2d 1047.

■ {¶ 12} However, once an original custody award has been made, that award will not be modified unless it serves the best interest of the child. Id.

{¶ 13} The instant case arises from an original custody dispute in the juvenile court between a parent—the father—and a nonparent—the grandmother. Therefore, the unsuitability test set forth in *Perales* is the appropriate legal standard.

{¶ 14} Contrary to the father's assertions, we find that the magistrate correctly determined this matter under the unsuitability standard. On the second day of trial, the magistrate advised the parties that she would follow the *Perales* case and, thus, the father's unsuitability must be established.

■ {¶ 15} The father contends that the trial court abused its discretion in awarding legal custody to the grandmother because the testimony and evidence at trial did not establish that he was unsuitable pursuant to any of the *Perales* factors. We disagree.

{¶ 16} In adopting the magistrate's findings of fact, conclusions of law, and recommendation, the trial court found by a preponderance of the evidence that the father was unsuitable as legal custodian of his minor children, based upon his limited interest and participation in the children's care and well-being, and that awarding legal custody to him would be detrimental to the children. The trial court also found that granting legal custody to the grandmother and awarding the father liberal visitation was in the children's best interest.

{¶ 17} The trial court found that the father rarely attended the children's extracurricular activities, did not attend parent/teacher conferences, and failed to maintain child support during unemployment. The court also concluded that the father had continuing problems finding reliable transportation and depended on the grandmother to transport the children. Furthermore, the evidence demonstrated that the father's current employment conflicted with the children's education—he would not be available to prepare them for school, ensure their attendance, or provide transportation.

{¶ 18} Most important, the children's guardian ad litem ("GAL") testified that the father was unsuitable as legal custodian because it would be detrimental to the children. The GAL further testified that the award of legal custody to the father would be adverse to the children because it would require another change in their lives. Losing their mother and being moved from place to place to live with family members caused traumatic change in the children's lives. Thus, the amount of time the children spent with their grandmother had established stability in their lives. The GAL also testified that the children expressed a desire to continue to live with their grandmother and visit their father.

{¶ 19} Based on the record before us, we find that the trial court applied the correct legal standard in deciding this matter and acted reasonably in awarding legal custody to the grandmother.

{¶ 20} The grant of legal custody to a nonparent does not divest the natural parent of all parental rights, privileges, and obligations toward their children. R.C. 2151.011(B)(19) defines "legal custody" as

a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, *all subject to any residual parental rights, privileges, and responsibilities.*

(Emphasis added.)

{¶ 21} Thus, even though the grandmother was awarded legal custody of the children, the father's legal rights and responsibilities regarding his children were not usurped.

{¶ 22} Accordingly, the first and second assignments of error are overruled.

### Independent Review of Magistrate's Decision

{¶ 23} In his final assignment of error, the father argues that he was entitled to a de novo review of his objections to the magistrate's decision and that the juvenile court's failure to independently review the testimony and evidence submitted to the magistrate was error.

{¶ 24} Juv.R. 40(E)(4)(b) provides that the trial court shall rule on the objections and that "[t]he court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter itself."

{¶ 25} The trial court, in disposing of the father's objections, stated, "[T]he court, upon due consideration of the decision and objections thereto confirms, approves, and adopts said decision and overrules said objections." There is no requirement that the trial court remand the matter or hear additional evidence. Thus, the trial court properly followed the mandate of Juv.R. 40(E)(4)(b).

{¶ 26} Although a court is obligated to conduct an independent analysis of the facts and conclusions contained in the magistrate's report, it is not obligated to modify the magistrate's decision when it agrees with that decision. *Jarvis v. Witter*, Cuyahoga App. No. 84128, 2004-Ohio-6628, 2004 WL 2830789, citing *Madama v. Madama* (Sept. 3, 1998), Cuyahoga App. No. 73288, 1998 WL 563997. Absent a specific showing that demonstrates the trial court did not review the issues, we cannot say that the trial court abused its discretion in adopting the magistrate's recommendation without conducting a hearing.

{¶ 27} Accordingly, the final assignment of error is overruled.

Judgment affirmed.

FRANK D. CELEBREZZE JR., P.J., concurs.

CHRISTINE T. McMONAGLE, J., concurs separately.

CHRISTINE T. McMONAGLE, Judge, concurring.

{¶ 28} The controlling case law in this matter is *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047, which establishes that in cases between a parent and nonparent, the natural parent has a fundamental interest in the care, custody, and management of his children and a "paramount right" to their custody, unless the right has been forfeited by abandonment, contract, or a total inability to care for and support the children. In short, the court may not award custody to a nonparent without first making a finding of parental unsuitability. *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971.

{¶ 29} Here, the magistrate, after determining that none of the above factors are apposite to the case at bar, engaged in what at first blush appears to be a best-interest analysis as between the biological father and maternal grandmother, when the analysis called for was the suitability of the natural parent. The labels used by the magistrate are irrelevant; it is the nature of the analysis that is an issue.

{¶ 30} The magistrate made the following findings: the father rarely attended the children's extracurricular activities, did not attend parent/teacher conferences, and failed to maintain child support during unemployment. She further found that he had continuing problems finding reliable transportation and that the hours of his current employment made him unavailable to prepare the children for school or provide transportation. All of these problems are endemic to the plight of the working parent, however, and should not be used to declare a parent unsuitable. Under this logic, a working parent would *always* be deprived of custody in favor of an unemployed or retired relative.

{¶ 31} The appropriate analysis is whether the natural father is unsuitable as custodian, not whether someone else is *more* suitable. This is indeed a difficult case. It is clear that the magistrate was touched by the children's election to stay with their grandmother and the guardian ad litem's recommendation that they not be dislocated yet again because of the death of their mother. These factors could admittedly constitute issues of unsuitability, and, therefore, in light of these factors only, I vote to affirm the judgment of the trier of fact.