[Cite as *In re J.R.*, 2016-Ohio-5054.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| IN RE: | : | Appellate Case No. 26894 |
| | : | |
| J.R. | : | Trial Court Case No. 2011-1712 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of July, 2016.

. . . . . . . . . . .

C. RALPH WILCOXSON, Atty. Reg. No. 0061974, 211 Kenbrook Drive, Suite 5, Vandalia, Ohio 45377
    Attorney for Appellant

B.H. and T.R.
    Appellees, *pro se*

. . . . . . . . . . . .

HALL, J.

{¶ 1} C.W. ("W.") appeals the Montgomery County Juvenile Court's decision denying him legal custody of his godson "Jack[1]." The court concluded that W. failed to

---

    [1] We will use this name as a pseudonym for the minor child.

prove that the child's mother is an unsuitable parent, a necessary preliminary finding in a child-custody proceeding between a parent and a nonparent. Finding no error with the court's conclusion, we affirm.

## I. Background

{¶ 2} On August 1, 2014, W. filed a complaint for legal custody of Jack, then almost four-and-a-half years old. Two weeks later W. moved for ex parte custody, and the trial court granted him interim temporary custody. A hearing before a magistrate was held in March 2015 at which testified W., Jack's mother, and four witnesses presented by W., including W.'s aunt, mother, and godmother. The magistrate later issued a decision denying the motion for legal custody, saying that W. had failed to prove that Mother is an unsuitable parent. The magistrate terminated interim temporary custody and granted W.'s visitation rights.

{¶ 3} W. filed objections to the magistrate's decision with the juvenile court. The court overruled the objections and adopted the magistrate's decision.

{¶ 4} W. appealed.

## II. Analysis

{¶ 5} W. assigns two errors to the juvenile court. The first alleges that the "[c]ourt failed to make a finding of parental unsuitability" and argues that the court should have found that Mother was unsuitable. The second assignment states, "Manifest Weight of the Evidence" and argues that the juvenile court's decision denying W. legal custody is not supported by the weight of the evidence.

{¶ 6} Mother did not file a brief.

{¶ 7} R.C. 2151.23(A)(2) "grants juvenile courts exclusive original jurisdiction 'to

determine the custody of any child not a ward of another court of this state.' This includes 'custodial claims brought by the persons considered nonparents at law.' " *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 14, quoting *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, 780 N.E.2d 241, ¶ 43. "A juvenile court's custody decision will not be reversed absent an abuse of discretion." (Citation omitted.) *In re A.C.*, 12th Dist. Butler No. CA2006-12-105, 2007-Ohio-3350, ¶ 15. *See also In re M.O.*, 2d Dist. Montgomery No. 26457, 2015-Ohio-2430, ¶ 7 (saying that "we will not reverse an award of legal custody absent an abuse of discretion").

**{¶ 8}** "[T]he overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Consequently, before awarding legal custody of a child to a nonparent, a court must determine that the parent is unsuitable. *Id.* at the syllabus. This determination is "a necessary first step in child custody proceedings between a natural parent and nonparent." *Id.* at ¶ 18. A court may find that a parent is unsuitable if it finds, by a preponderance of the evidence, that the parent "abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child." *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus. "Nonparents seeking custody have the burden of demonstrating a parent's unsuitability." (Citation omitted.) *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931, ¶ 58 (8th Dist.).

**{¶ 9}** Here, the magistrate found W.'s testimony "inconsistent and incredible." *Magistrate's Decision and Judge's Order* (Mar. 31, 2015). The magistrate noted that W. first testified that he had sole possession of Jack from the time the child left the hospital after he was born until the custody hearing. But later W. said that he attended the University of Toledo in 2012 and 2013 and that Jack was not with him. The magistrate also noted that W. admitted to telling his mother, aunt, and godmother that he was Jack's father when he knew that he was not. But more important, said the magistrate, was W.'s failure to present evidence proving that Mother is unsuitable to raise Jack.

**{¶ 10}** W. objected, contending that Mother had abandoned Jack, has been unable or unwilling to care for him, or was otherwise unsuitable to parent him. The juvenile court, after independently reviewing the evidence, rejected these contentions. W. testified, said the court, that Jack lived with him from the time he was two weeks old until August 2012, when he left to attend the University of Toledo, where he was until May 2013. W. said that when Jack was born Mother was going through some tough times and that she told him that she could not care for Jack and was going to give him away. The juvenile court noted that three of W.'s witnesses also testified that Jack came to live with W. soon after his birth. While he was at the university, said W., Jack lived with either his parents or Mother. The day W. returned home from the university, both W. and W.'s mother testified, he picked up Jack. W.'s mother also testified that, at one time, W. and Jack lived with her for five or six months. Mother disputed much of this testimony, the court noted. Mother testified that Jack lived with her from birth until August 2014. Before then, she said, Jack would often visit W. and stay with him for usually a couple of days. Around August, Mother

said, her home was broken into and electric cords were cut, pipe was taken out of the walls, and many items were stolen. Mother said that she asked W. if Jack could stay with him while repairs were made, and W. agreed. According to Mother, she left Jack with W. for two weeks, the longest time that he was ever with W. It was when she tried to get Jack back after those two weeks, said Mother, that she learned W. had sought legal custody.

{¶ 11} The juvenile court found that Mother has three other children (ages seven years, one year, and two months) who all live with her. She said that she intended to enroll Jack in summer school. Mother also said that Jack was enrolled in CareSource and that the last time that she took him to see a doctor was in 2013. Mother testified that she had taken Jack to see a doctor for his asthma and that she had a suction machine and a breathing machine in her home. The court said that Mother testified that she does not smoke marijuana, drink alcohol, take drugs, or get into fights in Jack's presence. While Mother admitted that she has been in fights—the last a couple of years ago—she said that she has matured. The court noted that while W.'s mother testified that Jack told her that he saw Mother being arrested, there is no corroborating evidence of this arrest.

{¶ 12} Ultimately, the juvenile court agreed with the magistrate and concluded that "[t]here was no testimony or other evidence presented to prove that [Mother] is not suitable to raise the child." *Decision and Judgment Concerning Objections to the Decision of the Magistrate*, 4 (Oct. 20, 2015). It is "undisputed," said the court, that Mother "has custody of and provides for the needs of her three other children" and that she "attempted to see to the educational needs of the subject child by enrolling him in school, and she provides medical care for the subject child." *Id.*

{¶ 13} W. argues in the first assignment of error that Mother is unsuitable because

she has abandoned Jack, constructively abandoned him, and has been unable or unwilling to care for him. W. begins his argument by saying that "R.C. 2151.412 & R.C. 2151.353(A)(3) mandate[] the process in a child custody proceeding between a parent and a nonparent." *Brief of Appellant*, 5. But neither of these statutes applies here. R.C. 2151.412 concerns case plans prepared by public children services agencies and private child placing agencies. But no case plan was required in this case, because no agency was involved. *Compare* R.C. 2151.412(A) (providing that an agency is required to develop a plan only if the agency is providing services to the child and one of four enumerated situations exists). R.C. 2151.353 concerns the disposition of an abused, neglected, or dependent child,[2] but Jack has not been adjudicated abused, neglected, or dependent.

**{¶ 14}** Later in argument, W. says that R.C. 2151.412(H) and R.C. 3109.04(F) list factors that a court is to consider when making custody decisions involving nonparents. R.C. 2151.412(H) lists "general priorities" that should guide the development of a case plan and a court's review of the plan. As we have already said, R.C. 2151.412 does not apply in this case. R.C. 3109.04(F) lists factors that a court should consider, when deciding how to apportion parental rights and responsibilities, "[i]n determining the best interest of a child." W.'s argument ends by talking about best interests: "The best interests of the child may require placement with a third person even though parents have the primary right to custody. Ohio is a Best Interests of the child state and thusly a parent's right to custody and control is not absolute and bends to the child's best interests. While

---

[2] R.C. 2151.353(A)(3) pertinently states that "[i]f a child is adjudicated an abused, neglected, or dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child."

the child's best interests will normally be served by placing a child in the parent's home, the right of a parent to custody cannot control if the circumstances show that a non-parent can better serve the child's interest." *Brief of Appellant*, 8. But the question of Jack's best interest is not relevant unless Mother is determined to be unsuitable. "Where a parent is found suitable for custody and the parent has not previously lost custody of the child to a nonparent, there is no need to further determine that a change in circumstances has occurred or that custody is in the best interest of the child." (Citations omitted.) *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931, at ¶ 59. Because the juvenile court determined that Mother was suitable for custody, Jack's best interest is not relevant and the court did not consider it.[3]

{¶ 15} W. argues in the second assignment of error that the trial court's decision denying him legal custody is contrary to the manifest weight of the evidence. He contends that the trial court should have found Mother unsuitable because ample evidence shows that she has been absent during Jack's life and shows that giving custody to Mother would be to Jack's detriment. W. also contends that the evidence overwhelmingly favors him and that the court disregarded his close relationship with Jack.

{¶ 16} W. says he took Jack to doctors appointments and that Mother testified that she did not accompany them. Mother, says W., was unaware of Jack's medications, could

---

[3] If the court had reached the best-interest question, R.C. 3109.04 might apply. "R.C. 3109.04 * * * typically deals with custody disputes arising out of divorce actions; the opposing parties in R.C. 3109.04 custody disputes are usually the children's parents, who may have nearly equal emotional, financial and educational advantages to offer the children and who are on an equal footing before the law." *In re A.J.*, 2d Dist. Miami No. 2014-CA-28, 2015-Ohio-543, ¶ 10. Nevertheless, R.C. 2151.23(F)(1) states that "[t]he juvenile court shall exercise its jurisdiction in child custody matters in accordance with sections 3109.04 * * *."

not identify his medical-care providers, and could not explain Jack's diagnosis or treatment. Elsewhere in his argument, W. says that Mother testified that she was aware of his medical problems and has a breathing machine but has never given Jack a breathing treatment. W. says that Mother's living conditions are unstable and that she is unable to provide consistent stable housing for Jack. Although Mother received child support and welfare, says W., she failed to assist financially with Jack's care and has failed to provide medical coverage. W. says that Mother admitted to having smoked marijuana in her children's presence, though he concedes that she said that she does not do it anymore. Mother also admitted to several convictions for theft, W. points out, though he also concedes that she said that she no longer steals.

{¶ 17} According to W., after the magistrate's hearing Mother was arrested for theft and falsification and is currently serving an 80-day jail sentence. W. also asserts that Mother has a detainer out of Sugarcreek Police Department, has been arrested at least three times since the hearing, and has fraudulently collected welfare benefits. W. attached to his appellate brief a copy of Mother's recent arrest record. But it does not appear from the appellate record that the arrest record was presented to the juvenile court. Nor does it appear that the court knew about the jail sentence, detainer, recent arrests, or welfare-fraud claim. Certainly no evidence of these matters was presented and the court made no related findings. Therefore we will not consider these unsupported criminal allegations.

{¶ 18} Much of the testimony that W. cites to indicate that he should have custody of Jack goes to the best-interest question. The only question here, though, is whether Mother is a suitable custodian, " 'not whether someone else is *more* suitable.' " (Emphasis sic.) *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931, at ¶ 58, quoting *In re S.M.*, 160 Ohio

App.3d 794, 2005-Ohio-2187, 828 N.E.2d 1044, ¶ 31 (8th Dist.) (McMonagle, J., concurring). A juvenile court's discretion in custody matters " 'should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' Thus, an appellate court affords deference to a judge or magistrate's findings regarding witnesses' credibility." (Citation omitted.) *In re A.C.*, 2007-Ohio-3350, at ¶ 15, quoting *In re A. W.-G.*, 12th Dist. Butler No. CA2003-04-099, 2004-Ohio-2298, ¶ 6. We are not persuaded to disturb the findings here. Deferring to those findings, we conclude that the weight of the evidence is not contrary to the determination that Mother is a suitable parent. Thus the juvenile court did not abuse its discretion by denying W. legal custody of Jack.

**{¶ 19}** The first and second assignments of error are overruled.

### III. Conclusion

**{¶ 20}** We have overruled each of the assignments of error presented. The juvenile court's judgment is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., and FAIN, J., concur.

Copies mailed to:

C. Ralph Wilcoxson
B.H.
T.R.
Hon. Anthony Capizzi