[Cite as *In re A.R.*, 2021-Ohio-2785.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | |
|---|---|
| IN THE MATTER OF: A.R. | : |
| | : |
| | :    Appellate Case No. 2021-CA-7 |
| | : |
| | :    Trial Court Case No. P0008922 |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Juvenile Division) |
| | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of August, 2021.

. . . . . . . . . . .

DAVID S. PETERSON, Atty. Reg. No. 0007836, 87 South Progress Drive, Xenia, Ohio
45385
    Attorney for Plaintiff-Appellant Grandmother

BRIAN E. LUSARDI, Atty. Reg. No. 0080294, 85 West Main Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellee Father

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Appellant, the maternal grandmother of A.R. ("Grandmother"), appeals from a judgment of the Greene County Court of Common Pleas, Juvenile Division, awarding legal custody of A.R. to A.R.'s biological father ("Father"). In support of her appeal, Grandmother contends that the trial court abused its discretion in finding that Father was a suitable parent. Grandmother also contends that the trial court's suitability finding was against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

**{¶ 2}** On February 11, 2019, Grandmother filed a complaint for legal custody of her grandson, A.R., who is currently 13 years old. In the complaint, Grandmother alleged that her daughter, A.R.'s biological mother ("Mother"), had been A.R.'s legal custodian and that Mother had died on January 20, 2019. Grandmother further alleged that she should be awarded legal custody of A.R. because Father was not a suitable parent. With the complaint, Grandmother filed a motion for emergency custody of A.R., which the trial court granted.

**{¶ 3}** On February 20, 2019, Father filed his own complaint for legal custody of A.R. Six months later, on August 29, 2019, a custody hearing was held before a trial court magistrate. Immediately prior to the hearing, the magistrate conducted an in camera interview of A.R. The transcript of A.R.'s in camera interview was not made a part of the appellate record. The subsequent hearing on Grandmother and Father's competing complaints for custody was, however, made a part of the appellate record.

The following is a summary of the testimony that was presented during that hearing.

{¶ 4} The first witness to testify was Detective Matt Miller of the Xenia Police Department. Detective Miller testified that in 2014, Father pled guilty to one count of aggravated assault and one count of improperly handling a firearm in a motor vehicle, both felonies of the fourth degree. Miller testified that the offenses stemmed from an incident where Father discharged a firearm from inside his vehicle at three individuals sitting outside a house in a residential neighborhood.

{¶ 5} The next witness to testify was Detective Craig Black of the Sugarcreek Township Police Department. Detective Black testified that in 2017, Father pled guilty to one count of trafficking marijuana and one count of illegal cultivation of marijuana, both felonies of the third degree. Black testified that the offenses stemmed from his obtaining a search warrant and discovering a small marijuana grow room inside a detached outbuilding at Father's residence. Black testified that the grow room contained marijuana buds in containers that were ready to be sold and/or for personal use. Black also testified that 3.9 pounds of marijuana was discovered in Father's bedroom. Black further testified that, as part of Father's plea agreement, Father worked with the police department's drug task force and assisted officers with investigating other marijuana traffickers.

{¶ 6} Grandmother testified regarding her ability to care for A.R. and A.R.'s relationship with Father. Grandmother testified that Father used profanity in front of A.R., and she recalled an incident in which A.R. had called her on the telephone crying because Father was cursing at him and calling him names. Grandmother testified that she immediately called Father and confronted Father about the incident. Grandmother testified that Father told her that A.R. was upset because Father did not want A.R. to eat

candy before dinner.

{¶ 7} Grandmother additionally testified that on several occasions Father smelled of alcohol when he picked up A.R. from Mother's residence, and that on one occasion Father's vehicle smelled of marijuana. Grandmother admitted, however, that she did not call the police and permitted A.R. go with Father on those occasions. Grandmother explained that, although she smelled alcohol on Father, Father was not acting drunk or as if he could not drive.

{¶ 8} Grandmother further testified that Father was current on his child support, but that Father did not exercise regular parenting time with A.R. Grandmother testified that A.R. stayed overnight with Father once every three or four months and that Father had only attended one of A.R.'s football games. A.R.'s maternal aunt similarly testified that Father did not see A.R. often. Although A.R.'s aunt testified that Father only attended a couple of A.R.'s football games, she admitted that it was possible Father had been at the games and that she just had not seen him there.

{¶ 9} After A.R.'s aunt testified, Father was called to testify as if on cross-examination. Father testified that he saw A.R. regularly and went to several of A.R.'s football games and practices in 2017. Father testified that he and Mother had never battled over visitation and that he would often pick up A.R. from Mother's residence when Grandmother was not around. Father testified that A.R. regularly spent the night at his residence when A.R.'s half-brother was visiting Father. Father also testified that A.R. was often with him when his parole officer conducted her random, weekly checks.

{¶ 10} Concerning his criminal history, Father testified that he was successfully terminated from community control for his felony convictions in 2014 and 2017. Father

testified that the altercation underlying his 2014 conviction for aggravated assault and improperly handling a firearm in a motor vehicle was over his ex-girlfriend. Father admitted that he handled himself poorly during the altercation. Father testified that he was legally carrying the firearm in question, but panicked and fired three shots in the air when three men came to his vehicle and threatened to hurt him.

{¶ 11} Regarding his 2017 conviction for trafficking marijuana and illegal cultivation of marijuana, Father testified that he was not a drug trafficker, but pled guilty to the trafficking offense as part of a plea agreement. Father maintained that the 3.9 pounds of marijuana found in his bedroom was a single marijuana plant. Father testified that he stopped smoking marijuana when he was on probation. Father additionally testified that there was no truth to Grandmother's allegations that he was under the influence of alcohol or marijuana when he picked up A.R. from Mother's residence.

{¶ 12} In addition to his felony convictions, Father testified to having a 2012 minor misdemeanor conviction for disorderly conduct, which was originally charged as possession of marijuana drug paraphernalia. Father also admitted to having multiple misdemeanor convictions for failure to confine and failure to register vicious dogs.

{¶ 13} Father testified that he was employed full-time with Tackett Tree Service and Bruens Concrete. Father testified that his combined income from that employment was approximately $30,000 a year. Father also testified that he previously had a few thousand dollars of child support arrearages, but had since paid all the arrearages off. Father further testified that he worked from 8 or 9 a.m. to 4 or 5 p.m. and did not usually work on the weekends. Father indicated that he hoped to work with Grandmother in terms of providing childcare for A.R. while he was at work. Father testified that he and

Grandmother had discussed working together in that manner after Mother passed away.

{¶ 14} Although Father admitted to using profanity in A.R.'s presence, Father testified that he tried not to make it a frequent occurrence and denied ever calling A.R. names. Father also admitted that A.R. had expressed his desire to live with Grandmother. Father testified that he loved A.R. very much and did not want A.R. to lose his Grandmother.

{¶ 15} The custody hearing was continued until December 16, 2019, so that A.R.'s guardian ad litem ("GAL") could testify. The GAL testified that one of his major concerns with A.R. was how poorly A.R. was doing in school. The GAL reported that A.R. had a 0.3 GPA. The GAL testified that while A.R. was primarily in Grandmother's custody, A.R. missed 30 days of school between January 20, 2019, and April 8, 2019. For the 2019-2020 school year, the GAL reported that as of December 9, 2019, A.R. had been absent from school 15 times and tardy 4 times. The GAL testified that Father had expressed to him that A.R. did not have any structure or discipline when he was with his Grandmother, and that A.R. was allowed to do whatever he wanted.

{¶ 16} The GAL also testified that whenever he asked A.R. who he wanted to live with, A.R. would give the exact same answer every time in a seemingly coached manner. According to the GAL, A.R. would respond by saying that Father had never had anything to do with him, had never been a part of his life, and that he would be better off with Grandmother. The GAL testified that he believed A.R.'s response was coached because A.R.'s demeanor would immediately change when answering the question, and because A.R.'s response did not sound like it was coming from a 12-year-old child. The GAL also testified that he believed the response was coached because his investigation indicated

that A.R. did, in fact, interact with Father. The GAL testified that the only neutral party he talked to, Father's probation officer, reported that Father interacted with A.R.

{¶ 17} Continuing, the GAL testified that A.R. was happy in both his Father's and Grandmother's homes. The GAL also testified that Father had adequate housing for A.R., was able to adequately provide for A.R.'s welfare, and was successfully terminated from his probation. Although the GAL testified that his concerns about Father's criminal history were not completely alleviated by Father's being successfully terminated from community control, the GAL nevertheless recommended that A.R. should be placed with Father.

{¶ 18} On January 13, 2020, the magistrate issued a decision finding that Father was a suitable parent. The magistrate therefore awarded legal custody to Father, with Grandmother getting standard visitation. On January 16, 2020, Grandmother filed objections to the magistrate's decision and later supplemented those objections on March 13, 2020. Father then filed a response in opposition to Grandmother's objections on March 27, 2020.

{¶ 19} Because the GAL's recommendation was against A.R.'s wishes, the trial court submitted the matter to a magistrate to determine whether A.R. should be appointed his own attorney. The parties thereafter discussed that issue during a pretrial telephone conference with the magistrate. Following the telephone conference, the magistrate issued an order appointing an attorney for A.R. The magistrate also scheduled a final custody hearing for September 14, 2020, which was only to cover what had happened since the last custody hearing on August 29, 2019. Unfortunately, the transcript of the hearing held on September 14, 2020, was not made a part of the appellate record.

{¶ 20} On September 22, 2020, the magistrate issued a decision awarding legal custody to Grandmother and standard visitation to Father. In so holding, the magistrate found that, during the hearing, Father had admitted that he would fail a drug screen for marijuana, and he thereafter tested positive for marijuana. The magistrate also indicated that, based on this information, the GAL reversed his recommendation that custody should be granted to Father and instead recommended that custody be granted to Grandmother. Therefore, the magistrate's decision granting custody to Grandmother was based on the GAL's new recommendation, Father's criminal history, and Father's inability to refrain from illegal activity.

{¶ 21} On October 5, 2020, Father filed objections to the magistrate's decision, and he supplemented those objections on February 1, 2021. On February 8, 2021, Grandmother moved for the trial court to overrule Father's objections and to affirm the magistrate's most recent decision granting her legal custody of A.R. On February 26, 2021, the trial court issued a judgment entry sustaining Father's objections to the September 22, 2020 decision and overruling Grandmother's objections to the January 13, 2020 decision. The trial court therefore awarded legal custody of A.R. to Father and standard visitation to Grandmother.

{¶ 22} In reaching its decision, the trial court found that, while Father "undoubtedly and irrefutably has a concerning criminal history and [Father's] testing positive for marijuana following the final hearing was inexcusable and concerning, the record does not constitute the type of detriment required to render [Father] unsuitable to parent." Dkt. No. 1-372. Specifically, the trial court found that "[t]he record does not sufficiently establish that [Father]: failed to favorably respond to criminal sanctions; that he was

absent from his child's life due to repeated incarcerations; that he has a likelihood of recidivism that would interfere with his ability to parent [A.R.]; that his criminal history impeded his ability to provide care for [A.R.] in the future; or that he could not meet the child's needs." *Id.* Instead, the trial court found that "the evidence established that although the child desired to live with his grandmother, he appeared happy and well-cared for in his Father's home." *Id.*

{¶ 23} Grandmother now appeals from the trial court's decision, raising two assignments of error for review. Because Grandmother's two assignments of error are interrelated, we will address them together for ease of discussion.

**First and Second Assignments of Error**

{¶ 24} Under her first assignment of error, Grandmother contends that the trial court's decision awarding Father legal custody of A.R. was against the manifest weight of the evidence. Under her second assignment of error, Grandmother contends that the trial court's decision was an abuse of discretion. For the following reasons, we disagree with both of Grandmother's claims.

{¶ 25} "[T]he overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." (Citations omitted.) *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. "This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution." (Citations omitted.) *Id.* "Since parents have constitutional custodial rights, any action by the state that affects this parental right, such

as granting custody of a child to a nonparent, must be conducted pursuant to procedures that are fundamentally fair." (Citations omitted.) *Id.* To that end, before awarding legal custody of a child to a nonparent, the trial court must determine that the parent is unsuitable. *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus. This determination is "a necessary first step in child custody proceedings between a natural parent and nonparent." *Hockstok* at ¶ 18.

{¶ 26} "A court may find that a parent is unsuitable if it finds, by a preponderance of the evidence, that the parent 'abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' " *In re J.R.*, 2d Dist. Montgomery No. 26894, 2016-Ohio-5054, ¶ 8, quoting *Perales* at syllabus. " 'Detrimental' means some type of harm is or can be suffered by the child." (Citation omitted.) *In re M.N.*, 6th Dist. Lucas No. L-15-1317, 2016-Ohio-7808, ¶ 13. Therefore, "[c]ourts deciding a parent's 'suitability' under the final prong of that analysis should focus on 'the harmful effect of [parental] custody on the child, rather than [on] society's judgment of the parent.' " *In re R.D.B.*, 2d Dist. Montgomery No. 28122, 2019-Ohio-1547, ¶ 20, citing *Perales* at 98. Accordingly, " '[t]he appropriate analysis is whether the natural [parent] is unsuitable as custodian, not whether someone else is *more* suitable.' " (Emphasis sic.) *Id.*, quoting *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931, ¶ 58 (8th Dist.). "The parent, not the nonparent, is the focus in a suitability test." *In re O.P.*, 8th Dist. Cuyahoga No. 109355, 2020-Ohio-4835, ¶ 16, citing *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 15.

{¶ 27} "The standard of review we apply to a trial court's decision concerning child

custody is abuse of discretion." (Citation omitted.) *Cantrell v. Trinkle*, 197 Ohio App.3d 82, 2011-Ohio-5288, 966 N.E.2d 288, ¶ 35. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 28} Although a trial court possesses broad discretion in custody matters, the trial court does not have discretion to terminate a parent's right to custody where the suitability finding is unsupported by the record. *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 44 (4th Dist.), citing *Perales,* 52 Ohio St.2d 89, 369 N.E.2d 1047; *Penna v. Rowe*, 11th Dist. Portage No. 2012-P-0026, 2012-Ohio-5442, ¶ 21. As previously noted, the trial court must find by a "preponderance of the evidence" that the parent is unsuitable in order to grant custody to a nonparent. "A 'preponderance of the evidence' is 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' " *Trinkle* at ¶ 36, quoting *Black's Law Dictionary* (6th Ed.1998) 1182.

{¶ 29} When determining whether the trial court's decision concerning a parent's suitability is against the manifest weight of the evidence, "we are guided by the presumption that the findings of the trial court are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice [inflections] and use these observations in weighing the credibility of the testimony." *Id.*, citing *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991). When an award of custody is

supported by competent, credible evidence, such an award will not be reversed as being against the weight of the evidence. *Id.*, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶ 30}** In this case, the record does not indicate that Father abandoned A.R., contractually relinquished custody of A.R., or that Father was totally incapable of supporting or caring for A.R. Indeed, there was competent, credible evidence in the record establishing that that Father was able to care and provide for A.R. and that A.R. was happy in Father's home. However, there was an issue as to whether granting Father legal custody would be detrimental to A.R. given Father's criminal history and marijuana use.

**{¶ 31}** With regard to Father's criminal history, the record reflects that Father was successfully terminated from community control in both of his felony cases due to his abiding by all the terms and conditions of his supervision. The record also reflects that, for the 2017 drug case, Father cooperated with law enforcement and assisted as a drug informant. Furthermore, while the GAL found that Father's criminal history was concerning, it is significant that the GAL did not find that Father's criminal history warranted placing A.R. in Grandmother's custody. From this evidence, the trial court could have reasonably concluded that Father's criminal history was not detrimental to A.R. As previously discussed, the trial court found that the record did not establish by a preponderance of the evidence that Father failed to favorably respond to criminal sanctions or that Father was absent from A.R.'s life due to repeated incarcerations. The trial court also found that the record did not establish that Father had a likelihood of recidivism that would interfere with his ability to parent A.R. or that Father's criminal

history would impede his ability to provide care for A.R. in the future. All of these findings were reasonable and were supported by competent, credible evidence in the record.

**{¶ 32}** As for Father using marijuana during the pendency of the case, it is significant that the transcript of the September 14, 2020 hearing (the hearing during which Father admitted to using marijuana) was not made a part of the appellate record. Without the hearing transcript, the circumstances surrounding Father's marijuana use is unknown to this court. For example, the record does not establish when Father last used marijuana, where Father had used marijuana, how many times Father had used marijuana, and whether A.R. was present at the time Father had used marijuana. This is significant because this court has previously stated that: "[T]he recreational use of marijuana, outside the presence of the child, without more, do[es] not establish detriment." (Citation omitted.) *Trinkle,* 197 Ohio App.3d 82, 2011-Ohio-5288, 966 N.E.2d 288, at ¶ 47. Moreover, "[s]imply because one situation or environment would have been the 'better' situation, does not mean the other is detrimental or harmful to the child." *In re Porter*, 113 Ohio App.3d 580, 589, 681 N.E.2d 954 (3d Dist.1996).

**{¶ 33}** Pursuant to App.R. 9(B), it is the appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decision. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Id.* at 199, citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). Without the filing of a transcript (or a statement of the evidence or proceedings under App.R. 9(C) or an agreed statement under App.R. 9(D)), this court has nothing to pass upon and must presume the validity of the trial court's findings and

affirm. *Id.* This means that "we must presume that the trial court acted with regularity and did not abuse its discretion." *Pennington v. Pennington*, 2d Dist. Montgomery No. 19092, 2002 WL 1252173, *2 (June 7, 2002); *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988).

{¶ 34} Here, the trial court presumably had access to the transcript of the September 14th hearing and determined that Father's marijuana use was not detrimental to A.R. Without a transcript, we must defer to the trial court's judgment on that matter. *See In re J.Y.*, 2d Dist. Greene No. 2021-CA-4, 2021-Ohio-2126, ¶ 24. Therefore, based on the available record, we cannot say that the trial court's decision finding Father to be a suitable parent was against the manifest weight of the evidence or an abuse of discretion.

{¶ 35} We emphasize that our decision in this case does not necessarily indicate that this court would have reached the same conclusion as the trial court if it were sitting as the trier of fact. That is not the standard of review that this court must apply. Rather, in applying the appropriate standard of review, we simply find that, based on the evidence in the record, there was competent, credible evidence to support the trial court's judgment and that said judgment was not without a sound reasoning process so as to constitute an abuse of discretion.

{¶ 36} For the foregoing reasons, Grandmother's first and second assignments of error are overruled.

**Conclusion**

{¶ 37} Having overruled both of Grandmother's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

David S. Peterson
Brian E. Lusardi
Laura E. Pendry
Hon. Amy H. Lewis