[Cite as *In re M.N.*, 2016-Ohio-7808.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re M.N., C.Y.

Court of Appeals No. L-15-1317

Trial Court No. 12225115

**DECISION AND JUDGMENT**

Decided: November 18, 2016

* * * * *

Karin L. Coble, for appellant.

Ann M. Baronas, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, L.Y., appeals the July 17, 2015 judgment of the Lucas County

Common Pleas Court, Juvenile Division, granting custody of her two children, M.N. and

C.Y., to petitioners-appellees, J.F. and Je.F. For the reasons that follow, we affirm.

**Assignment of Error**

{¶ 2} Appellant sets forth the following assignment of error:

1. The Magistrate's conclusion that appellant is "unsuitable" is against the manifest weight of the evidence, and the trial court abused its discretion in adopting it and granting legal custody to a third-party non-parent.

**Background Facts**

{¶ 3} Appellant's custody issues began in May 2012, when Lucas County Children Services ("LCCS") sought protection for her children, M.N. and C.Y. LCCS filed its complaint on May 23, 2012, and a hearing was scheduled for June 28, 2012.

{¶ 4} On June 5, 2012, a guardian ad litem ("GALl") was appointed. After investigating appellant's home environment, GAL1 became concerned with the children's well-being. Appellant was addicted to drugs and alcohol, and was in an abusive relationship. The children witnessed these hardships. GAL1 filed an ex-parte motion for interim temporary custody and change of placement on June 19, 2012. An emergency hearing took place the following day. The magistrate awarded temporary custody of the children to J.F.

{¶ 5} J.F. is an older cousin of the children and Je.F. is his wife. J.F. and Je.F. lived in Michigan, while the children and appellant lived in Ohio. LCCS objected to the magistrate's placement of the children in Michigan. LCCS moved to dismiss its complaint on June 28, 2012, which would have necessitated the return of the children to

2.

appellant. The magistrate sua sponte ordered the children to stay with J.F. and Je.F. because awarding custody to appellant would have been detrimental to the children's well-being. The children's father was incarcerated and appellant had no adequate means or support. At the time, appellant was homeless and/or living in a battered-women's shelter.

{¶ 6} On June 29, 2012, J.F. and Je.F. filed a complaint for custody. That same day, GAL1 requested legal custody of the children be awarded to J.F. and Je.F. On March 8, 2013, the magistrate awarded temporary custody to J.F. and Je.F. On April 16, 2013, appellant objected on grounds the magistrate improperly considered inadmissible evidence. The trial court overruled appellant's objection and affirmed the magistrate's award on July 23, 2013. Appellant appealed. On March 21, 2014, this court reversed and remanded, finding the magistrate improperly considered an in-camera interview with a sibling of the children, named A.H., who opposed appellant having custody. *See In re C.Y.*, 6th Dist. Lucas No. L-13-1184, 2014-Ohio-1144, ¶ 17.

{¶ 7} Following remand, the children's father was no longer in prison and filed his own motion for custody in April 2014. The case was bifurcated, with one part to determine parental suitability and the other to determine the best interests of the children. On July 8, 2014, GAL1 withdrew from the case, and a second guardian ad litem ("GAL2") was appointed. The suitability hearings took place in October 2014 and February 2015, and the parties later stipulated that custody to J.F. and Je.F. was in the best interest of the children.

3.

**{¶ 8}** In March 2015, the magistrate concluded, by a preponderance of the evidence, that an award of custody to either parent would be detrimental to the children. This conclusion was based on the following findings of fact:

1. The children are seen regularly for mental health services. Mother has not attended any of the children's appointments. Mother may not have been made aware or otherwise been invited to the children's appointments. Mother claims that she has been denied access to the children's medical and mental health information, as well as their schooling information, etc.

2. The children are involved in sporting activities. According to Petitioner's wife, mother has only attended one of the children's games. She had been made aware of the game schedules. Mother states that she has attended all but two of the children's baseball games.

3. Mother attended at least one of the children's school open houses.

4. Mother has court ordered visits with the children every Monday and Wednesday, from 4:00 pm-7:00 pm. Mother has, at best, been inconsistent with her visits, sometimes having gone several weeks without seeing the boys. Mother cites a lack of transportation as the reason for her inconsistent visits.

5. Mother does not have a driver license or a vehicle and relies on the bus or friends to transport her.

4.

6. The children were allowed to spend Labor Day weekend with mother. During that weekend, mother took the children to a benefit at a local bar. The children remained in an enclosed area outside the bar where the benefit, at least in part, was taking place. The printed advertisement for the benefit clearly states that nobody under 21 years old was allowed. In one picture taken at the benefit, the youngest child is seen pretending that he is smoking marijuana.

7. On that same weekend, mother left the children in the care of their cousins, ages 15 and 17 years old, because she had to work. She worked from 7:00 am-10 or 11:00 pm. She left food for the children. When the children were returned to Petitioner, the oldest child was observed to have bruising about his body, particularly on his ribs, hips, and back. Mother states that she believes that this occurred because the children (not the cousins) were wrestling with each other. Petitioner's wife believes that the injuries were caused by the cousins.

8. Mother has been at her current residence for 2.5 years. She is employed at Olive Garden, full time, and earns $9.35/hour. Mother's share of the rent is $122, with the rest being subsidized by Catholic Charities. She resides in a two bedroom apartment.

9. Petitioner initially requested custody due to mother's history of substance abuse and domestic violence. Mother completed substance abuse treatment and now testifies that she does not believe that she needed it, but that she just "went through the motions." She continues to consume at least some alcohol. She has no sober support network. She admits that when the GAL asked her if she consumes any alcohol, she lied when she responded that she does not.

10. During one visit between the children and mother, mother gave one of the children a breathing treatment, using the medication, Albuterol. This is in spite of the fact that the child was prescribed this medication some two or more years previously and is not currently prescribed this medication.

11. Mother has not provided any financial support for the children since Petitioner obtained temporary custody in 2012.

12. Mother's oldest daughter (not party to this case) has been in attendance throughout this hearing. Mother testified, in front of this child that she has no boyfriend, but instead, has a friend with benefits.

13. A co-worker of mother testified that she has known mother for over two years, that mother is a motivated worker, and that on the occasions that she has seen mother and the children together, the children

have been happy to see mother, and that the interactions between them was appropriate.

{¶ 9} On April 2, 2015, the trial court affirmed the magistrate's order after an independent review of the record, finding or concluding, "[a]n award of custody to either parent would be detrimental to the children." Both parents objected. On July 17, 2015, the trial court affirmed the magistrate's finding of unsuitability as to both parents. Based on this and the best interest of the children, the trial court issued a final order awarding custody to J.F. and Je.F. on August 12, 2015. It is from this judgment appellant appeals.

**Standard of Review**

{¶ 10} A trial court's custody determination will not be disturbed unless the trial court abused its discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). An abuse of discretion involves more than an error of judgment; it implies an attitude of unreasonableness, unconscionability, or arbitrariness. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 11} A trial court is given broad discretion in its determination of parental custody rights. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Further, deference is to be accorded to a trial court's assessment of conflicting evidence because the credibility issue is "even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997).

7.

**Law**

{¶ 12} R.C. 2151.23(A)(2) grants the juvenile courts "exclusive original jurisdiction to determine the custody of any child not a ward of another court of this state." *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 15. When determining custody between a parent and nonparent, the overriding principle is parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). A court may not award custody to a nonparent without first making a determination of parental unsuitability against the parent. *In re A.C.*, 6th Dist. Lucas No. L-11-1129, 2012-Ohio-826, ¶ 14.

{¶ 13} The pertinent standard to determine parental unsuitability is the *Perales* fourth factor, which is satisfied where "an award of custody to the parent would be detrimental to the child." *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus. When relying on this factor, the trial court must avoid making a determination based purely on the best interest of the child. *In re Kenneth M.*, 6th Dist. Lucas No. L-96-177, 1997 Ohio App. LEXIS 2729, *12 (June 27, 1997). "Detrimental" means some type of harm is or can be suffered by the child. *See Choi v. Ohio Univ.*, Ct. of Cl. No. 2015-00256-AD, 2015-Ohio-4898, ¶ 10. The court "is to consider the extent and magnitude of [harm] that is likely to be experienced by a child being placed with his or

8.

her natural parent." *See, e.g.*, *Butts v. Hill*, 5th Dist. Licking No. 11-CA-46, 2011-Ohio-5512, ¶ 51 (affirming finding of parental unsuitability).

{¶ 14} To determine likely harm to appellant's children, this court considers her (1) problematic ongoing behavior, (2) lack of means, transportation and support, (3) history of failing to meet her children's needs, and (4) poor choices and parenting skills. *See* R.C. 2151.414(E) (providing guidelines to determine likely detriment when child services or other agency seeks custody); *see also In re S.E.*, 8th Dist. Cuyahoga No. 96031, 2011-Ohio-2042, ¶ 16 (stating history of abuse, truancy, and fear as "factors").

## Assignment of Error

{¶ 15} In the sole assignment of error, appellant argues the trial court abused its discretion because the manifest weight of the evidence is against her being deemed unsuitable. Appellee contends the trial court did not err in finding appellant unsuitable.

{¶ 16} A judgment is not against the manifest weight of the evidence if "supported by some competent, credible evidence[.]" *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). The weight to be given the evidence and the credibility of the witness are issues primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

## Problematic Ongoing Behavior

{¶ 17} An illustration of the fourth *Perales* factor is found in *In re A.C.*, where this court reversed a finding of parental unsuitability as being against the manifest weight of evidence. *See In re A.C.*, 6th Dist. Lucas No. L-11-1129, 2012-Ohio-826 at ¶ 33. The

9.

*In re A.C.* trial court determined awarding custody of a child to the mother was potentially detrimental because the mother had problematic ongoing behavior. *Id.* at ¶ 16. Namely, the trial court found the mother failed to seek treatment for her post-traumatic stress disorder and failed to seek family counseling for her child. *Id.* The appellee-grandmother argued these failures were representative of problematic ongoing behavior because there was a "continuing risk" to the child. *Id.* at ¶ 32. It was alleged that the mother physically abused her other children, although the record showed only one occasion of abuse. *Id.* at ¶ 26. The trial court found the lack of attention given to the child's needed treatment and counseling supported a determination of unfitness. *Id.* This court reversed because the mother did not need treatment for PTSD, sought but was denied family counseling, and showed no propensity to abuse her children beyond the one incident. *Id.* at ¶ 32. Thus, there was no competent and credible evidence demonstrating the mother had problematic ongoing behavior. *Id.*

{¶ 18} Here, unlike *In re A.C.*, there is competent and credible evidence supporting a finding that appellant has problematic ongoing behavior which is a continuing risk to her children. This evidence is based on testimony and interviews of or with M.N. and C.Y.'s parents, guardians, family members and two separate GALs.

{¶ 19} In April 2012, appellant had physical-abuse, alcohol and drug problems. LCCS sought protective services because of these problems, but dismissed the complaint in opposition to the children moving out of state. Following this dismissal, both J.F. and GAL1 filed emergency motions to award J.F. temporary custody. GAL1's opposition to

10.

appellant having custody was based on problematic ongoing behavior later detailed in her report filed September 2012.

{¶ 20} GAL1 reported appellant could be "charming, demure, capable, and efficient, and [yet] * * * can be hysterical, violent, and incompetent, when she so chooses." The report implied appellant was a "master manipulator" who needed treatment for bipolar disease because appellant had split personalities. These findings were reportedly based on interviews with "family members," who knew appellant well, such as appellant's sister and daughter, A.H. The report stated, "The key piece of back story, which I gathered from her family members, is that there are 'two [L.Y.s]'." It followed, "More than one individual used the words 'bi-polar' to describe Mother." The report also implied appellant's manipulation and dual personalities falsely persuaded "various social workers and therapists" to believing she was "an innocent victim." GAL1 was not convinced the LCCS caseworkers knew appellant well enough to know of her ongoing behavior.

{¶ 21} GAL1 eventually concluded: "If the children were returned to their Mother's custody, I have no doubt that they would return to their previous life. Mother has been in service since April [2012], and still does not demonstrate any intention to actually change." Again, this report was from September 2012. After remand in March 2014, the 2012 report was entered into evidence through judicial notice and without objection.

11.

{¶ 22} The second GAL (GAL2) was appointed in July 2014. She also produced a report, which was filed October 2014, reflecting appellant's problematic ongoing behavior. The report stated, "This Guardian is very concerned about Mother's mental health. Mother's decision making abilities are highly questionable[.]" This conclusion was reached despite GAL2 recognizing appellant's behavioral improvements, which were: maintaining a residence, child-proofing her home, working full-time, being a hard worker, teaching classes at LCCS, and not doing drugs.

{¶ 23} GAL2 took issue with how appellant lacked responsibility and accountability. Appellant claimed, and still claims, her children should not have been taken in the first place. The report stated, "Mother is adamant that she did nothing wrong and her children never should have been taken away." It followed, "that if Mother believes that the children never should have been removed, that her participation and ultimate completion of services was not for the right reasons and Mother did not gain any insight into her past or current issues." These concerns were reported by GAL2 to be "verified by Mother advising that she is in mental health treatment but has not been there in years." GAL2 looked to appellant's prescriptions, which had not been filled recent enough to convince GAL2 appellant cared to manage her mental health issues.

{¶ 24} The 2014 report further implied appellant lied about drinking alcohol, lied about past alcohol problems, lied about taking the children to an unacceptable forum, lied about leaving the children with her "boyfriend," lied about seeking treatment, and, finally, lied about exposing her children to an atmosphere which embraced drugs or

alcohol. The report reflected GAL2's independent research confirmed appellant lied to GAL2 often.

{¶ 25} Therefore, GAL2 confirmed what the GAL1 found: appellant may appear to be changed, yet her ongoing behavior is potentially harmful for M.N and C.Y. This is the position J.F. asserted as the truth and the conclusion the trier-of-fact deemed was the truth.

{¶ 26} Accordingly, appellant's problematic ongoing behavior is potentially detrimental to the children. *In re A.C.* is wholly distinguishable.

### Lack of Means, Transportation and Support

{¶ 27} This court notes lacking transportation, struggling financially, partying, drinking or smoking cannabis, alone, does not suffice to deem a parent unfit. *See*, *e.g.*, *Cantrell v. Trinkle*, 197 Ohio App.3d 82, 2011-Ohio-5288, 966 N.E.2d 288 (2d Dist.). In *Cantrell*, the trial court improperly determined that a 22-year-old mother was unfit because she lived in subsidized housing, worked full-time, lacked health insurance, had no driver's license, had little to no support, smoked cannabis, let the child's insurance lapse for a month, failed to comply with her case plan, spent considerable time partying, and often left the child with unsuitable persons. *Id*. at ¶ 30.

{¶ 28} The appellate court reversed the finding of parental unfitness for the following reasons. The mother had consistent housing for the child, which was not found to be substandard or unsanitary. *Id*. at ¶ 42. She worked full-time to provide for the child, and actually did it successfully without assistance from the father. *Id*. at ¶ 48.

13.

Although the mother did not have health insurance herself, she did maintain it for the child and the one-month lapse had no ill-effects on the child's health. *Id.* at ¶ 44. The mother did not have transportation, but showed she could plan and find transportation when needed. *Id*. at ¶ 46. She had support, because two aunts and the child's grandparents were willing to help. *Id*. at ¶ 45. There was no evidence of the child being left with unsuitable persons, as the child was only left with the mother's suitable parents and aunts. *Id*. at ¶ 38. The case plan was no issue, because the mother complied with the case plan prior to trial. *Id*. at ¶ 30. And lastly, while the mother partied, drank and admittedly smoked cannabis, her actions of seeking child-care prior to such behavior showed she was responsible and accountable. *Id*. at ¶ 47.

{¶ 29} Similar to *Cantrell*, appellant here does not drive and has not resolved her driver's license issues, does not have a large support-system, struggles financially, and parties. However, unlike the mother in *Cantrell*, appellant put forth no evidence M.N. and C.Y. would have transportation when needed, a sufficient support-system when needed, or a responsible and accountable caregiver when and as needed.

{¶ 30} The record shows appellant lost her driver's license after being in an accident without insurance coverage. She testified the reinstatement fees are too expensive and the issues are unresolvable. Appellant indicated she plans to file bankruptcy as a solution, but has not done so. Therefore, there is competent and credible evidence that appellant has no consistent transportation. Again, this alone does not support appellant being deemed unfit. *See id*. at ¶ 46. However, having no adequate

14.

means or support-system by which to overcome the lack of transportation does weigh against her.

{¶ 31} Since 2012, appellant has shown no ability to consistently visit her children due to her lack of means, transportation and support. GAL1 reported appellant requested her visitation days be moved from Tuesdays and Thursdays to Mondays and Wednesdays because appellant wanted to attend AA meetings. Appellant assured that transportation would be available on those days. Appellant confirmed her mother, a friend, or the bus would be her way to visitation. This commitment was not consistently met, however. GAL1 reported in 2012, "Mother missed visits after the schedule was changed to Monday and Wednesday, claiming to be too busy and tired from her classes, which end at 3:30." GAL1 reported in June 2014, "While Mother has visitation twice a week, she does not visit regularly."

{¶ 32} In addition to failing to attend visitation consistently, not having transportation is also often stated as appellant's reason for failing to attend the children's sporting and school events, counseling sessions, and medical appointments. Therefore, there is competent and credible evidence showing the lack of transportation, means and support has interfered with appellant's life commitments.

{¶ 33} It is reasonable to conclude appellant's lack of transportation, means and support will also likely interfere with the children's development, in light of their past trauma. Based on the record, the children currently play and enjoy sports such as basketball and baseball, and they also attend church and mental-health counseling.

15.

J.F. and Je.F.'s transportation makes these activities possible. Due to the helpful aspects of church, sports and counseling, it is appropriate to find elimination of these activities, because of no transportation, could be detrimental to the children. Thus, unlike *Cantrell*, which reversed because adequate support overcame a lack of transportation and means, the trial court was correct in finding M.N. and C.Y. would potentially suffer harm because of appellant's lack of support, means, and transportation.

### History of Failing to Meet Needs

{¶ 34} Unlike the mother in *Cantrell*, appellant has a history of poor judgment and failing to meet her children's needs. Appellant highlights her two plus years of working at a restaurant and maintaining a residence as evidence she can support her children. The record, nonetheless, has no further indication of appellant's ability to adequately care for her children.

{¶ 35} J.F. and Je.F. testified appellant has not provided financial support for the children since J.F. and Je.F. received custody in 2012. Appellant contends she has not provided financial support because no court-ordered obligation has been imposed. However, nothing prevented appellant from voluntarily supporting her children. There is no evidence in the record appellant will prioritize the financial needs of her children.

{¶ 36} The trier-of-fact was also convinced the physical, social, mental and emotional needs of the children would be at risk if appellant is awarded permanent custody. An analogous case is *Joynson v. Ditoro*, wherein the Seventh District Court of Appeals affirmed the trial court on grounds there was competent and credible evidence

that custody of a child to the parent would be detrimental. *See Joynson v. Ditoro*, 7th Dist. Jefferson No. 11 JE 29, 2012-Ohio-5468.

{¶ 37} In *Joynson*, the mother lost custody of her child to a paternal aunt who had cared for the child a significant portion of his life. *Id*. at ¶ 1. The mother was often unwilling or unable to care for the child for long periods of time and left the child with others routinely. *Id*. The mother created instability in the child's life by not maintaining a residence. *Id*. The mother was not clean and did not dress the child properly. *Id*. The mother had mental health issues and the child had physical-health needs which she neglected to meet. *Id*. She was involved with partners who were abusive and she argued and fought with partners in front of the child. *Id*. at ¶ 12. Upon losing the child temporarily, she hardly kept in contact with the child. *Id*. at ¶ 1. The court concluded the *Perales* factors had been met because returning the child to the mother would have been detrimental because the mother could not meet the child's needs. *Id*.

{¶ 38} Consistent with *Joynson*, the record here reflects appellant has a history of not meeting the needs of her children. The record reveals that prior to J.F.'s custodial intervention, M.N. and C.Y. were sexually abused, devastatingly neglected, malnourished, socially untrained, exposed to appellant being abused, and "traumatized since they were born," according to the trial court.

{¶ 39} In terms of past failures to meet social and emotional needs, J.F. testified the children initially acted like "wild animals" when he gained custody. He testified the children displayed sexual nature, knowledge and language which "no small child should

17.

know about." In addition, the children urinated and defecated in their pants frequently. This often occurred when the children were under stress related to appellant. GAL1 stated, "Recently, Mother told the children that she had renewed her relationship with [appellant's friend], and [M.N.] began defecating on himself." This was reportedly because appellant's friend allowed her son to sexually abuse M.N., and M.N. suffered sufficient stress to cause him to defecate upon himself when confronted with the psychological trigger. Defecating and urinating in pants are not normal behaviors for children of M.N. and C.Y.'s ages at that time, and the GALs' reports substantiated J.F.'s facts.

{¶ 40} With respect to failing to meet the children's physical and mental needs, both GALs reported on the sexual abuse, neglect and malnourishment to which the children were subjected when appellant had custody. GAL1 interviewed A.H., M.N. and C.Y., and the children's allegations included "fondling, oral sex and sodomy, with multiple perpetrators." The perpetrators, one being an adult male, were left alone to sexually abuse the children, even though appellant had knowledge of the risk and abuse. GAL1 reported, "Mother was informed of the [sexual] abuse and took no action." A.H. stated, "Mother did not intervene to protect the children" from this abuse because she "does not act like an adult." Thus, there is competent and credible evidence appellant allowed or caused the abuse and neglect to occur, which traumatized the children.

{¶ 41} Further, the record shows M.N. and C.Y. were malnourished when J.F. received custody in 2012. J.F. and Je.F. reported to GAL1 that the children initially stole

18.

and hoarded items such as food and small objects from the house. The report detailed that "Monroe County Community Mental Health Authority stated that this is a trait of children who have experienced nutritional neglect in the past." A.H. reported to GAL1 that appellant regularly did not prepare meals for the children. GAL1 reported an older family member "mentioned that [A.H.] called him when the boys were babies, and he told her how to make sugar water for her infant brothers, as there was no formula in the house." GAL1 reported being "concerned the lack of appropriate meals for the children is an indication of neglect, and not poverty." This was founded upon appellant having food stamps yet still failing to provide for the children. This court finds competent and credible evidence appellant was the cause of her children's malnourishment.

{¶ 42} The record therefore supports appellant caused the children's harmful environment prior to 2012. However, appellant insists she should have never lost custody of M.N. and C.Y. Appellant has blamed the magistrate, the judge, the court, J.F., Je.F., and A.H., but has not displayed any accountability for her own actions. Nothing in the record indicates she takes responsibility for her children's past suffering.

{¶ 43} In 2012, appellant's youngest son, M.N., knew appellant was the cause of his pain. GAL1 reported, "[M.N.] reported that he has seen Mother drink alcohol during the past few months, and it scares him deeply." It followed, "[M.N. and C.Y.] have reported being abused and neglected in [their] Mother's care while she was intoxicated, and LCCS found allegations to be indicated and substantiated." The record shows appellant was diagnosed with "alcohol abuse/dependency." Yet, as the 2014 GAL2

19.

report articulated, appellant denies both ever having a drinking problem and ever being the cause of her children's trauma. These denials reflect poorly and invalidate appellant's allegedly improved behavior because they undermine her children's proven trauma. Appellant's lack of responsibility and accountability suggest the children will suffer again if placed in her custody.

{¶ 44} Additional evidence indicated appellant's inability to physically protect her children. During one visit with the children, appellant administered an outdated prescription to C.Y. GAL2 reported the prescription was not current and appellant did not recognize the danger involved. The 2014 report stated, "Another concern this Guardian has is * * * with a prescription medication and nebulizer. [C.Y.] is not currently prescribed any type of breathing medication." Appellant administered the medicine despite not being aware of the children's prescriptions. She later admitted she was not invited and did not attend any medical appointments. Therefore, it is reasonable to conclude appellant could not have knowledge of how the child's current prescription may interact with the outdated medicine.

{¶ 45} In addition, appellant still displays the propensity to leave the children with or around unsuitable persons and environments, despite the potential consequences. For instance, on the one occasion appellant had her children overnight, she entrusted her 15 and 17-year-old nephews to care for the children because she had to work. At best, M.N. and C.Y. ended up fighting which caused bruising and visible harm to C.Y. At worse, and as Je.F. maintains, the children were abused by the nephews. Either way, the

20.

children's physical well-being suffered while in the custody of appellant. This type of harm does not happen in the custody of J.F. and Je.F., although the boys fight often.

{¶ 46} The children were also subjected to unsuitable persons and environments while appellant partied. The children attended a "pig roast" function with appellant on their overnight visit with her. GAL2 confirmed, "[M.N. and C.Y.] were the only children there[,]" and, "[C.Y.] was seen pretending like he was smoking a joint and Mother's sister was seen dancing provocatively and appeared to be intoxicated." The trial court found this was evidence of appellant's current lack of care. We cannot say the trial court abused its discretion in light of appellant's history. Thus, there is competent and credible evidence which supports a finding that it is potentially harmful for the children to be with appellant based on her history of failing to meet her children's needs.

**Poor Parenting Skills**

{¶ 47} In *Butts v. Hill*, the Fifth District Court of Appeals relied on the fourth *Perales* factor in determining parental unsuitability. *Butts*, 5th Dist. Licking No. 11-CA-46, 2011-Ohio-5512 at ¶ 50-52. Following the father's death, a paternal aunt sought custody of the child. *Id*. at ¶ 53. The paternal aunt already had custody of the child's sister. *Id*. The mother had a strained relationship with her older children, and the older children opposed placement of the child with the mother because of the mother's poor choices. *Id*. The mother had subjected her older daughters to a pattern of emotional and physical abuse. *Id*. The mother did not foster any relationship between the child and other family members. *Id*. The court found this alienation problematic because the child

solely relied on an unskilled mother. *Id.* There was competent and credible evidence the mother lacked good parenting skills. *Id.* at ¶ 55.

{¶ 48} Consistent with *Butts*, the record here shows appellant is unskilled as a parent based on her history of poor choices and strained relationship with her older daughter. The record indicated A.H. opposed appellant being awarded custody of M.N. and C.Y., as A.H. was also traumatized by appellant's neglect and wanted nothing but the best for her brothers. In June 2012, a "no contact" order was instituted because appellant harassed A.H. about being the reason appellant lost custody of M.N. and C.Y. GAL1 reported, "[Appellant's aunt] has informed A.H. that she intends to get custody of the boys so she can send them to Florida with Mother, where A.H. will never see them again." It followed, "Mother and Mother's family tell anyone and everyone that it is '[A.H.]'s fault' that the boys were taken away, and that Mother does not want [A.H.] back."

{¶ 49} The 2012 GAL1 report said A.H. was diagnosed with post-traumatic stress disorder (PTSD) and co-morbid neglect as a result of the trauma appellant's poor choices caused. GAL1 stated A.H. "made several statements to me, her family, and her therapist, that I believe are 'red flags' for domestic violence." There is competent and credible evidence A.H. was a victim who had, and has, a strained relationship with appellant.

{¶ 50} Despite having a strained relationship with appellant, the record reveals A.H. still has a relationship with and deeply cares for her brothers. Therefore, and consistent with *Butts*, appellant's strained relationship with A.H., the trauma she caused

22.

A.H., the blaming of A.H., the threatened alienation of M.N. and C.Y. from A.H. and others, and the fact that A.H. opposes appellant gaining custody of her brothers, weigh in favor of the fourth *Perales* factor being met. There is competent and credible evidence appellant lacks parenting skills based on her relationship with, and treatment of, her children.

{¶ 51} Consequently, appellant has not demonstrated that she has developed the skills necessary to overcome her history of poor choices, problematic ongoing behavior, lack of means and support, and consistent failure to meet the needs of her children. Based on the record, it was not unreasonable, unconscionable, or arbitrary to deem appellant unsuitable as a parent. Accordingly, appellant's sole assignment of error is not well-taken.

## Conclusion

{¶ 52} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Stephen A. Yarbrough, J.
CONCUR.

_____
JUDGE