[Cite as *In re J.S.*, 2021-Ohio-1678.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.S., H.S., K.V.

Court of Appeals No. L-20-1109

Trial Court No. 19272672

**DECISION AND JUDGMENT**

Decided: May 14, 2021

* * * * *

Anthony J. Richardson II, for appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant, H.S., appeals the June 22, 2020 judgment of the Lucas County
Court of Common Pleas, Juvenile Division, naming appellee, J.S., the residential parent
and legal custodian of their only child, K.V.[1]  For the reasons that follow, we affirm the
trial court's judgment.

---

[1] Pursuant to the trial court's judgment, K.V.'s birth certificate was ordered to be
amended to reflect a change of last name to match appellee's.  For consistency, we
reference K.V. by his name as captioned in this appeal despite the name change.

## A. Facts and Procedural Background

{¶ 2} The parties have one child, K.V., born on January 4, 2019. At the time of K.V.'s birth, appellant was 18 and appellee was 17. The parties have never been married. On January 17, 2019, appellee's mother, C.S., filed a complaint to establish a parent/child relationship and a motion to establish allocation of parental rights and responsibilities on appellee's behalf. Prior to the filing of the complaint, the parties had not entered into any agreement regarding parenting time and visitation.

{¶ 3} At the initial pretrial hearing, the parties were ordered to attend mediation on May 21, 2019. There, the parties agreed to an interim parenting schedule in which appellant would remain the residential parent and appellee would be permitted parenting time, supervised by appellant, on Sundays, Wednesdays, and Fridays. The Sunday and Friday visitations were to take place at appellee's mother's residence. The Wednesday visitation was to take place at either appellee's mother's residence or at the residence of M.B., a mutual friend of both parties' families. The agreement did not state a presumption as to the location of the Wednesday visits or a procedure by which the parties would select the location. The magistrate approved of the parties' interim agreement and incorporated it into an order the following day ("Interim Order No. 1"). The magistrate also ordered the parties to attend a second mediation on July 11, 2019, to address any remaining issues.

{¶ 4} Appellant initially facilitated appellee's parenting time without incident. Then, a few weeks after the mediation, appellant and her grandfather were involved in a

2.

physical altercation with members of appellee's extended family at her high school graduation. Appellant alleges that appellee's cousin pushed her from behind while she was carrying K.V. Appellant's sister intervened and removed K.V. from the scene. Appellant then engaged in a physical confrontation with members of appellee's family before exiting the ceremony. Outside, she and her grandfather were approached by responding police officers. After speaking with the officers, appellant was arrested and charged with misdemeanor assault. She was ultimately found not guilty. Appellee was not present at the graduation ceremony or for the altercation.

{¶ 5} Both parties agree that appellee did not receive his ordered parenting time after the altercation. On June 27, 2019, appellee filed a motion to show cause why appellant should not be held in contempt for violating Interim Order No. 1. Appellee alleged that on at least four occasions, appellant denied him his parenting time with K.V. The motion to show cause was still pending at the time of the second mediation. The mediator determined that the case was not appropriate for mediation at that time. The magistrate set the matter for trial on October 10, 2019.

{¶ 6} On that date, the parties made a joint request to continue the trial and instead to hold a hearing on appellee's show cause motion. The magistrate granted the parties' request and conducted the requested hearing. The magistrate determined that appellant failed to comply with Interim Order No. 1 which required appellee to receive supervised parenting time. The magistrate entered a new order ("Interim Order No. 2") providing appellee with unsupervised parenting time on Sundays, Wednesdays, and Fridays

3.

beginning on October 11, 2019. Appellee's Sunday parenting time was to convert to overnight parenting time ending on Monday mornings beginning on November 3, 2019. K.V. was to be picked up at appellant's residence for appellee's parenting time. Appellant was ordered to provide appellee with a diaper bag containing all of the food, formula, clothing, and diapers necessary for K.V.'s care as well as a written schedule of K.V.'s routine.

{¶ 7} On October 23, 2019, at appellee's request, the magistrate appointed a guardian ad litem, Amy Stoner, to represent the interests of K.V. Stoner conducted in-person interviews with appellant and appellee and observed their interactions with K.V. at each of their respective residences. Stoner also interviewed appellant's grandfather and appellee's mother.

{¶ 8} On November 19, 2019, appellee filed his second motion to show cause why appellant should not be held in contempt for violating Interim Order No. 2. Appellee alleged that appellant denied him the parenting time granted in the order on numerous occasions. The parties again attempted mediation on December 3, 2019, but no agreement was reached.

{¶ 9} On January 21, 2020, appellee filed a combined emergency motion to show cause, for possession of the minor child, and for supervised visitation for appellant. Appellee's motion alleged appellant failed to comply with Interim Order No. 2 by denying him his parenting time on January 17, 2020. On that date, appellee arrived for his scheduled parenting time. After K.V. was placed in appellee's vehicle, appellee and

4.

his mother engaged in a physical altercation with appellant's mother and sister. During the altercation, appellant took K.V. from appellee's vehicle and refused to allow appellee to take K.V. as ordered. Appellee's motion was heard the following day. The trial court ordered both parties to undergo psychiatric evaluations and also amended Interim Order No. 2 to state that transfer of K.V. was to take place at the Toledo Police Department's Scott Park Location in Toledo, Ohio. The matter was set for trial on March 10, 2020.

{¶ 10} The trial took place over two days on March 10 and June 15, 2020. The following relevant testimony was presented at trial:

**Testimony of Appellant H.S.**

{¶ 11} Appellant testified on both days of the trial. Appellant began her March 10, 2020 testimony stating that from K.V.'s birth up to the date of trial, she had never identified appellee as K.V.'s father on any medical records. Appellant explained that she did this because before K.V. was born, appellee told her that he did not want to be involved in K.V.'s life. Appellant also identified appellee's refusal to provide financial support or to purchase any clothing or other materials necessary for K.V.'s care as the basis for her decision. Appellant conceded that because appellee has not been identified as K.V.'s father, he has been unable to access K.V.'s medical records or ask questions of his pediatrician. Appellant acknowledged that should appellee be allocated any parental rights or responsibilities that it would be important for him to have access to K.V.'s medical information. She testified that she would add appellee to all of K.V.'s medical documentation moving forward.

5.

{¶ 12} Appellant next testified regarding her compliance with Interim Order No. 1. She acknowledged that appellee was entitled to supervised parenting time at his mother's house on Mondays and Fridays and at either his mother's house or M.B.'s house on Wednesdays. While the parenting time was initially honored as ordered, appellant refused to allow appellee his ordered time following the incident at her high school graduation. Appellant testified she was scared to drop K.V. off at appellee's house out of fear that his family members would attack her. She explained that her fear was exacerbated by social media posts made by appellee's family that she perceived as threats to her safety. She testified that the posts did not mention her by name and that none of the posts were made by appellee. She believed, however, that appellee should have discouraged his family members from making any threats and deleted their comments when possible.

{¶ 13} Appellant also alleged that K.V. was not safe at appellee's residence because his family drank alcohol and consumed drugs in his presence. She claimed that she had pictures of the drug use, an apparent reference to a photograph of appellee's aunt, M.S., holding K.V. at a residence where drugs were present.

{¶ 14} Appellant informed appellee that following the graduation altercation and because she believed K.V. was unsafe at appellee's residence, that his parenting time established in Interim Order No. 1 had to be at her residence or a mutually agreed upon public place. She also told appellee that he had to be alone when he picked up K.V. She conceded that these additional requirements were not included in Interim Order No. 1.

6.

Nevertheless, appellant testified that she complied with Interim Order No. 1. It was her belief that if appellee truly wanted to see K.V. that he would accommodate her requests and that not agreeing to her conditions was "his choice."

{¶ 15} During her testimony, appellant was presented with a printout of text messages from June 2019 to September 2019. The messages were sent from appellee to appellant and reflected appellee's desire to see K.V. during his ordered parenting time. Appellant did not respond to the majority of appellee's messages. Appellant claims that she did not receive the messages to which she did not respond and suggested that the printout was fabricated to make her look nonresponsive. When she did respond, she informed appellee of the previously-described conditions under which she would allow him to see K.V.

{¶ 16} Regarding the October 11, 2019 hearing on appellee's motion to show cause, appellant testified that her desire was for the magistrate to set aside Interim Order No. 1 and not allow appellee any parenting time. She testified that she did not feel her "son's safety is being followed over there." She again claimed that she had photographs of drugs and cigarettes in the house and that when she used to visit there, appellee and his family smoked marijuana. Appellant testified that she requested Lucas County Children's Services ("LCCS") investigate appellee and his family for emotional maltreatment and physical abuse of K.V. based on K.V. returning to her residence with diaper rash and unexplained abrasions on his knuckles following appellee's parenting time. She received a letter from LCCS dated October 10, 2019, informing her that her

7.

allegations were unsubstantiated. Appellant also testified that despite her allegation that appellee and his mother were abusing drugs, they both passed a drug test administered during LCCS's investigation.

{¶ 17} On January 17, 2020, appellant was involved in another altercation with appellee when he and his mother went to pick up K.V. at appellant's residence pursuant to Interim Order No. 2. Appellant testified that K.V. was screaming and did not want to go with appellee. She claimed that appellee physically nudged and slapped her mother who was trying to record K.V. screaming with her cell phone. Appellant's sister then entered the altercation and began striking appellee and his mother. Appellant removed K.V. from the vehicle and took him back inside her residence. As she did, appellee stated that he was going to kill her. Both appellant's sister and mother had physical injuries as a result of the altercation. No charges were filed as a result of this incident.

{¶ 18} Appellant was recalled to testify on the second day of trial on June 15, 2020. She alleged that appellee had declined to exercise his right to parenting time since the previous trial date. She testified that she has made arrangements for K.V.'s transfer at the police station as required by the amended Interim Order No. 2 but that appellee always failed to show up. She produced screenshots from her phone identifying her phone's location at the police station for the time which she alleges corresponds with the arranged transfer time. She also testified that she informed appellee that since the onset of the COVID-19 pandemic and the related stay-at-home order imposed after the March 10, 2020 trial date, that all parenting time under Interim Order No. 2 would take

8.

place at her house or by way of video-conferencing despite the existing order stating otherwise. She conceded that appellee had not had any of his ordered parenting time since the March 10, 2020 trial date.

**Testimony of Appellee J.S.**

{¶ 19} Appellee's testimony took place on the second day of trial. His testimony described the events in reverse chronological order. He began his testimony stating that he has been unable to see K.V. since just before the March 10, 2020 trial date. Appellee testified that he has appeared at the police station as required in the amended Interim Order No. 2 but that appellant has failed to appear or contact him explaining her absence. He filed a police report each time appellant failed to arrive for K.V.'s pickup until the building was closed to the public as a result of the COVID-19 pandemic. He testified he did not receive any communication from appellant regarding video-conferencing with K.V. during the pandemic.

{¶ 20} Appellee testified that in accordance with Interim Order No. 1, appellant initially facilitated his parenting time. While Interim Order No. 1 was in effect, appellee never agreed for his Wednesday parenting time to take place at M.B.'s residence as was permitted by the agreement. He did not know M.B. and only agreed to that term at the first mediation because he was not represented by counsel and wanted to make appellant happy. At no point did he try to obtain M.B.'s contact information. He also testified that he was not comfortable spending his parenting time at appellant's residence, as she demanded following the graduation incident, because her grandfather had threatened him.

9.

{¶ 21} Appellee denied appellant's allegation that his residence is unsafe. He testified that he has all of the necessary supplies available to take care of K.V. Further, he testified that he has a crib for K.V. to sleep in and that, despite multiple family members living at his residence, that he alone would share a room with K.V. should he be named the residential parent and legal guardian.

### Testimony of C.S.

{¶ 22} C.S. is appellee's mother. She resides with appellee, her mother, her daughter, her sister, and two of appellee's cousins. She testified that appellee is a good father and takes care of K.V. when he is afforded his parenting time. She denied that anyone at the residence uses drugs.

{¶ 23} C.S. testified that she was aware of a photograph of her sister, M.S., holding K.V. in the presence of marijuana. C.S. stated that the picture was not taken at her residence and that she let M.S. know that she was angry M.S. took her grandson to a location where drugs were present. M.S. still lives with C.S.

{¶ 24} C.S. confirmed that an altercation occurred between the parties on January 17, 2020. She testified that she heard appellee tell appellant that he was going to kill her. She testified that appellee's outburst was out of character and was said in the midst of a physical altercation. She does not believe appellee's statement to have been threatening.

10.

**Testimony of M.B.**

{¶ 25} M.B. is a friend of both appellant's and appellee's relatives. She agreed to have her residence serve as the location for appellee's Wednesday parenting time under Interim Order No. 1 as a favor to appellant. She was unaware of the days on which her home could be used for appellee's parenting time and did not know that that the order listed her residence as one of two possible locations for appellee's Wednesday parenting time. She testified that appellant came to her house nine to ten times throughout the summer of 2019, ostensibly to permit appellee his parenting time. M.B. was unaware if appellant notified appellee of her planned visits or what day of the week they occurred. M.B. never provided appellee with her phone number or address.

**Testimony of M.V.**

{¶ 26} M.V. is appellant's grandfather. Appellant and K.V. resided with M.V. from the time of K.V.'s birth and still resided there at the time of the trial. M.V. testified that appellant is a great mother. He testified that appellee does not support K.V. financially or by providing any necessary supplies. M.V. denied that he or appellant ever refused to permit appellee to utilize his ordered parenting time. M.V. testified that when appellee did pick up K.V. for his parenting time that K.V. appeared anxious and cried.

{¶ 27} M.V. was present for the altercation at appellant's graduation. He testified that appellee's family attacked appellant in an effort to take K.V. He recounted that appellant was arrested outside the ceremony and charged with assault. He also testified

11.

that after her acquittal, appellee's family waited outside the courtroom and verbally threatened her.

**Testimony of T.V.**

{¶ 28} T.V. is appellant's mother. She testified that appellant invited appellee to her first prenatal care appointment. T.V. stated that while appellee was present for the visit he was distracted by phone calls from his mother complaining about how long the appointment was taking. T.V. drove appellee home from the appointment and he also complained about how long it had taken.

{¶ 29} T.V. noted that during the pregnancy, appellant provided appellee with an in utero ultrasound photograph of K.V. T.V. testified that appellee later returned and threw the ultrasound picture onto her front porch. T.V. perceived this as an indication appellee did not wish to be involved with K.V.

{¶ 30} T.V. also expressed concern about K.V.'s well-being when he is with appellee. T.V. testified that when appellee arrives for his parenting time that K.V. cries and says he does not want to leave.

**Testimony of guardian ad litem Amy Stoner**

{¶ 31} Guardian ad litem Amy Stoner was appointed on October 24, 2019. She testified that she observed K.V. at both appellant and appellee's residences. Stoner believes that K.V. was comfortable in both households. Stoner also conducted both in-person and phone interview with all parties. Based on her observations and interviews, Stoner determined it was in K.V.'s best interest that appellee be named his residential

12.

parent and legal guardian. Stoner also expressed the importance of K.V. maintaining a relationship with both parents and determined it was in K.V.'s best interest that appellant be granted parenting time on alternating weekends and overnight parenting time each Tuesday to Wednesday.

{¶ 32} Stoner testified that she considered all factors outlined in R.C. 3109.04(F) in making her best interest determination. Specifically, she testified that while most factors did not weigh in favor of either party, appellee was more likely to honor and facilitate court-approved parenting time rights and was more likely to encourage the sharing of love, affection, and contact between K.V. and appellant. Stoner expressed concerns over appellant's ability to facilitate a relationship between K.V. and appellee if she were named the legal guardian based on her failure to comply with previous court orders and her prior statements that it was not important for K.V. and appellee to have a relationship. Stoner stated that appellant's history as the primary caregiver for K.V. during his entire life did weigh in appellant's favor but consideration of this factor did not alter her recommendation. Stoner also determined that it was in K.V.'s best interest not to have any unsupervised contact with appellee's aunt M.S.

**Judgment Entry**

{¶ 33} The trial court rendered its judgment with an entry dated June 22, 2020. The trial court named appellee the residential parent and legal guardian of K.V. Appellant was granted parenting time in accordance with a schedule attached to the

13.

judgment entry.[2] The trial court also ordered that K.V. shall not have any unsupervised contact with his paternal aunt, M.S.

## B. Assignments of Error

{¶ 34} Appellant timely appealed and asserts the following errors for our review:

1. The trial court abused its discretion in naming [appellee] residential parent and legal guardian of [K.V.]

2. In the alternative, the case should be remanded to the trial court to clarify or modify the judgment entry in reference to unsupervised contact with paternal aunt M.S.

## II. Analysis

{¶ 35} In her first assignment of error, appellant argues that the trial court abused its discretion in naming appellee the residential parent and legal guardian of K.V. A trial court is given broad discretion in its determination of parental custody rights. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.3d 846 (1988). "A trial court's custody determination will not be disturbed unless the trial court abused its discretion." *In re. M.N., C.Y.*, 6th Dist. Lucas No. L-15-1317, 2016-Ohio-7808, ¶ 10, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). "An abuse of discretion involves more than an error of judgment; it implies an attitude of unreasonableness, unconscionability, or

---

[2] Appellant does not challenge the amount of parenting time granted to her in the judgment entry.

arbitrariness." *Id.*, *citing Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 36} Appellee sought an allocation of parental rights and responsibilities through an original action pursuant to R.C. 3109.04(B)(1).  To determine the allocation of parental rights and responsibilities in an original action, "the court shall take into account that which would be in the best interest of the children."  R.C. 3109.04(B)(1).  "In determining the best interest of a child * * * the court shall consider all relevant factors including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the

commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

R.C. 3901.04(F). The trial court's judgment entry noted its consideration of the best interest factors in allocating the parental rights and responsibilities for K.V. The trial court made specific reference to two factors—that appellee was more likely to honor and facilitate court-approved parenting time rights and that appellee has the ability to encourage the sharing of love, affection, and contact between the K.V. and appellant—as the basis on which it reached its conclusion.

{¶ 37} Appellant argues the trial court's judgment was an abuse of its discretion because other factors weighed in her favor. Specifically, appellant argues that K.V.'s relationship with her family is stronger than with appellee's family, as described in R.C. 3901.04(F)(1)(c), because appellee previously returned K.V. to her with unexplained injuries, K.V. was photographed with M.S. in the presence of drugs, and, on the occasions appellee was able to utilize his parenting time, K.V. would get upset and cry when appellee picked him up. Appellant also argues that K.V.'s adjustment to his home,

17.

school, and community, as described in R.C. 3901.04(F)(1)(d), weighs in her favor because she has been K.V.'s primary caregiver from birth while appellee has not provided any consistent care or support. Finally, appellant argues that her testimony that she would abide by the trial court's order to facilitate any parenting time granted to appellee shows that the R.C. 3901.04(F)(1)(f) factor either weighs in her favor or weighed equally in both parties' favor. For these reasons, she argues, the trial court abused its discretion when it named appellee K.V.'s residential parent and legal guardian. We disagree.

{¶ 38} Our review of the record reveals testimony that K.V. had a strong relationship with appellee's family. GAL Stoner testified that K.V. was comfortable with appellee and his family when observed at appellee's residence. Further, LCCS found that appellant's allegation that appellee's family was physically abusing K.V. was unsubstantiated. Appellant's argument that the strength of K.V.'s relationship with her family was stronger than that of K.V.'s relationship with appellee's family is not supported by the record.

{¶ 39} The record also shows that while appellee was entitled to parenting time under both interim orders, appellant refused to facilitate appellee's parenting time unless he agreed to additional conditions not required by the trial court. GAL Stoner testified that during the course of her investigation, appellant stated it was not important that K.V. have a relationship with appellee. Appellant reaffirmed this belief during her testimony. Therefore, appellant's role as K.V.'s primary caregiver and appellee's inability to utilize

18.

his parenting time—factors which appellant argues weigh in her favor—were the result of her defiance of existing trial court orders. Therefore, her argument that these factors weigh in her favor are without merit.

{¶ 40} Given the record before us, we find that the trial court naming appellee K.V.'s residential parent and legal guardian was not unreasonable, unconscionable, or arbitrary. The record shows that K.V. was safe and comfortable at appellee's residence and that appellee was more likely to abide by its order and facilitate appellant's parenting time. Accordingly, the trial court did not abuse its discretion in naming appellee K.V.'s residential parent and legal guardian and we find appellant's first assignment of error not well-taken.

{¶ 41} In her second assignment of error, appellant argues that this matter should be remanded to the trial court for clarification of the trial court's judgment entry. However, appellant's second assignment of error is without merit because she fails to allege any error in the trial court's judgment for our review.

{¶ 42} "An appellant, in order to secure reversal of a judgment * * * must not only show some error but must also show that the error was prejudicial[.]" *Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137 (1967). App.R. 16(A) requires appellant to provide a statement of the assignments of error presented for review, with reference to the place in the record where the error is reflected.

{¶ 43} Appellant agrees with the trial court's judgment that appellee's aunt, M.S., should not have unsupervised contact with K.V. Notably, appellant's brief does not ask

19.

this court to reverse the trial court's judgment regarding K.V.'s unsupervised contact with M.S. Instead, appellant's brief merely posits scenarios in which the trial court's order could be violated. Concerns over appellee's future compliance with the trial court's order does not constitute an error in the judgment itself and would properly be addressed with the trial court, not in this appeal. As a result, appellant has failed to comply with App.R. 16(A) by identifying in the record the error on which the assignment was based. Because she failed to allege any error in the trial court's judgment, we find appellant's second assignment of error not well-taken.

## III. Conclusion

{¶ 44} We find appellant's assignments of error not well-taken and affirm the June 22, 2020 judgment of the Lucas County Court of Common Pleas, Juvenile Division. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                              JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.               _____
CONCUR.                                       JUDGE

                                 _____
                                              JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.